## WILLIAMS vs. PORTER.

SALE OF CHATTELS. *(1, 2: 1) Delivery to vendee upon conditional executory contract of sale. Effect of failure to reduce to writing and file such contract under the statute. (2: 2) Sale without actual and continued change of possession. Statute of frauds. (3) Facts disproving fraud in such case. (4) Exchange of property by bailee, with bailor's consent.*

REVERSAL OF JUDGMENT: *(5) For erroneous instructions. (6, 7) For failure of special verdict to determine all the issues.*

1. Sec. 1, ch. 113 of 1873, provides that no contract or agreement for the sale of personal property, by the terms of which the title or right of property is to remain in the vendor, and the possession in the vendee, until the purchase price is paid or other conditions of sale are complied with, shall be valid against any other person than the parties thereto, unless such contract or agreement shall be reduced to writing, and the same or a copy thereof shall be filed in the office of the town clerk where said vendee resides, etc. *Held,* that the object of this statute is to place such a contract on the footing of chattel mortgages; and if it is not reduced to writing and filed in the proper office, the property affected by it in the possession of the vendee is liable to seizure as *his* property, on execution upon a judgment against him.

2. Two horses were delivered to plaintiff by one M. under a contract such as is described in said statute, and which was not duly filed. By a further stipulation in the contract, M. " signed " all his title and interest in a certain wagon to the plaintiff, as security for the value of the use of the horses until the first payment should become due. A few days after such payment fell due, plaintiff went to the stable where the horses were, and took them therefrom; but before he had removed them from the premises, M. proposed to hire them, and plaintiff let them to him; and at the same time it was agreed that the wagon should be the property of plaintiff in consideration of the use of the horses until that time, and it was constructively delivered to him. M. retained and used the horses and the wagon as bailee for hire, until they were seized by defendant upon an execution against M. *Held,*

(1) That as to the execution creditors of M., he was the absolute owner of the property after the delivery to him until the transactions next above stated.

(2) That the act of plaintiff in taking possession of the horses, and the constructive delivery of the wagon to him as his own, were equivalent to an absolute sale of the property to him by M.

(3) That as such sale was not followed by an actual and continued

change of the possession, it was presumptively fraudulent as against M.'s creditors; and the burden was upon plaintiff to show that the purchase was in good faith, without intent to defraud such creditors. R. S., ch. 107, sec. 5.

3. It appearing from the uncontroverted evidence, that the sale to plaintiff by M. was made in pursuance of the original agreement of the parties that plaintiff should have the property if M. should fail to pay for the horses, and the reasons disclosed for leaving the property with M. being satisfactory; and it further appearing that when the sale to plaintiff was made, the execution creditors had not obtained their judgment against M., and plaintiff did not know that they had any action pending against him; and it not appearing that there were any other creditors of M.— such sale by M. to plaintiff and bailment by the latter to M. must be held to have been made without intent on his part to defraud.

4. If a bailee exchanges the property of his bailor for other property, the title to such other property is in the bailor, if he elects to ratify the trade. It is therefore immaterial in this case, that the horses originally delivered to M. had been exchanged by him, with plaintiff's consent, for the horses here in dispute.

5. Where the judge might properly have directed the jury to find for the respondent, a judgment pursuant to the verdict in his favor will not be reversed for erroneous instructions.

6. A judgment on a special verdict will not be reversed for its failure to determine one or more of the issues, if the uncontradicted evidence proves that issue in favor of the prevailing party. *Hutchinson v. Railway Co.,* and other causes decided at this term.

7. In replevin, the jury found that plaintiff was the owner of the property, and entitled to its possession at the commencement of the action; and found also its value, and nominal damages for its detention, without finding expressly an unlawful detention, and without any general verdict in his favor; but the answer admits the taking, and the undisputed evidence shows a due demand and refusal. *Held,* that the defect in the verdict is no ground of reversal.

APPEAL from the Circuit Court for *Crawford* County.

Replevin, for a span of horses and a wagon. The action was commenced before a justice of the peace, and the complaint is in the statutory form, charging that the property is unlawfully detained by the defendant.

The answer is, 1. A general denial; 2. That the defendant (who, as is stated in the complaint, was the sheriff of Crawford county) seized and held such property under and by vir-

tue of an execution duly issued upon a judgment recovered by
Emily Bottum and Charles F. Bottum at the November term,
1875, of the circuit court for Crawford county, against one
James T. Mallory; and 3. That the property belonged to
Mallory.

The cause was taken to the circuit court by appeal, and on
the trial in that court it appeared that in May, 1875, the
plaintiff owned two horses, which he delivered to Mallory on
the 28th of that month, pursuant to the following written
agreement: "I hereby acknowledge *W. Williams*, the full
ownership of a span of horses known as follows: one eight-
year-old mare, known as the Smith mare; also one three-year-
old colt, cream color; in consideration of nonpayment of $140
to be paid as follows: $70 the 15th of October next, and $70
the 1st of January next. In consideration of nonpayment, I
sign all my right, title and interest in a certain wagon, known
as the Lee wagon, over to *W. Williams* as security for the use
and interest of said horses until October 15, 1875, to be paid
at that date, then said wagon released; interest to be ten per
cent. when paid. May 28th, 1875.      J. T. MALLORY."

This instrument was not filed in the office of the town clerk.
Before the first payment became due, Mallory, with the con-
sent of the plaintiff, traded one of the horses for another
horse, which he retained until the first payment became due.
A day or two after such payment became due, the plaintiff
called on Mallory therefor; but, finding him unable to make
the payment, the plaintiff, with Mallory's consent, went to his
stable and took the two horses therefrom, that is, the remain-
ing horse which the plaintiff let him have, and the one which
he obtained in the trade; but before the plaintiff had taken
them from the premises, Mallory proposed to hire the horses,
and the plaintiff hired them to him, and gave him permission
to trade them off for other horses. Mallory traded off the
horses for other horses, and kept and used the latter and the
wagon until the seizure of the property by the defendant.

The horses in controversy are those obtained by such trades. At one of these trades the plaintiff was present and received the boot money, being forty dollars.   The plaintiff never had the actual possession of the wagon, but at the time of the transactions above stated in October, it was agreed between Mallory and the plaintiff that it should be his property, and there was, probably, a constructive delivery thereof to the plaintiff.

The foregoing facts are proved by the uncontradicted evidence; as also the further fact, that before this action was commenced, and after the defendant had seized the property, the plaintiff made due demand of him .therefor, and the defendant refused to deliver it up.

The defendant's testimony related mainly to statements of the plaintiff made after his agreement with Mallory in October; but it did not tend to disprove the facts above stated.

It does not appear that the plaintiff knew, at any time before the seizure, that Mallory was indebted to any person, or that any action was pending against him.

. The judge instructed the jury that if the plaintiff's right of action depended upon the instrument of May 28th alone, he could not hold the property as against the judgment creditors under whose execution the defendant held it, because the instrument had not been filed or recorded as required by ch. 113, Laws of 1873.   He then briefly stated to the jury the plaintiff's testimony, which was substantially in accord with the above statement of the facts proved, and instructed them as follows:   " Should you adopt the testimony of the plaintiff, it would be a common case of loaning for hire; the horses taken would belong to the plaintiff, with the wagon, if the same was delivered to the plaintiff as compensation for the use of the team."   And further:   " The taking possession of the horses and retaining them for but a short time, without notoriety, may weaken the evidence of possession, but still it would be valid if made in good faith and not for the purpose

of immediately hiring back to Mallory." These are the only material portions of the charge.

The verdict is as follows: "We, the jury, find the plaintiff in this action to be the owner of the property replevied, and entitled to the possession thereof, at this time and when this action was commenced. We find the value of the two horses to be $90, and of the wagon to be $30, and that the plaintiff is entitled to damages for their detention, six cents."

A motion for a new trial for various alleged errors, and a motion in arrest of judgment for insufficiency of the verdict, were denied; and judgment was entered for the plaintiff pursuant to the verdict. The defendant appealed from the judgment.

*O. B. Thomas*, for the appellant, argued that the written agreement between plaintiff and Mallory is a contract of the kind described in sec. 1, ch. 113 of 1873; that it is the settled law of this state, in the case of a chattel mortgage not filed or recorded, where the property remains in the mortgagor's possession, that the mortgage is absolutely void as against the mortgagor's creditors (R. S., ch. 107, sec. 9; *Cotton v. Marsh*, 3 Wis., 221; *Single v. Phelps*, 20 id., 401; *Shepardson v. Green*, 21 id., 541); and that the act of 1873 extends this principle to sales of personal property where the vendor retains the title to secure himself until the purchase price is paid, but the possession remains in the vendee.

*George Mills*, for the respondent, argued, 1. That ch. 113 of 1873 must have a reasonable interpretation (*Margate Pier Co. v. Hannam*, 3 B. & Ald., 266; *Edwards v. Dick*, 4 id., 212; *Atkinson v. Fell*, 5 Maule & Sel., 240, 241; *Jackson v. Collins*, 3 Cow., 89, 96; *Green v. Kemp*, 13 Mass., 518; *Comm. v. Weiher*, 3 Met., 445; *Mayor, etc., v. Greenmount Cemetery*, 7 Md., 517); that the only person who can complain that another person is the apparent owner of a large amount of chattels, which he does not own in fact, is one who has thus been induced to give credit to such apparent owner;

Williams vs. Porter.

that a person who should give credit to the apparent owner, with knowledge that he was not the real owner, should not be allowed to take advantage of the act; that the same rule should apply to one who had never given any credit to the apparent owner; and that as the judgment under which the defendant levied upon the property here in dispute, was obtained in an action for slander, this case falls within the rule just stated. 2. That the property when seized was not held by Mallory under the original contract of conditional sale, but under a contract of hiring, to which the act of 1873 does and did not apply; and that if the transfer back from Mallory to the plaintiff should have been as notorious as though Mallory were making a sale to the plaintiff, but retaining the possession, still, even in that case, the retention of the possession by Mallory was shown to have been in good faith and not with intent to defraud creditors.

LYON, J. Sec. 1, ch. 113, Laws of 1873, is as follows: " No contract or agreement for the sale of personal property, by the terms of which the title or right of property is to remain in the vendor, and the possession thereof in the vendee, until the purchase price is paid, or other conditions of sale are complied with, shall be valid against any other person than the parties thereto, unless such contract or agreement shall be reduced to writing, and the same or a copy thereof shall be filed in the office of the town clerk of the town where said vendee resides, or, if he shall not be a resident of the state, then in the town where such contract or agreement is made; and such town clerk shall file such contract or agreement in the same manner, and shall receive the same compensation therefor as is provided by law for filing chattel mortgages: *provided*, that the effect of such filing shall not extend beyond one year from maturity of the contract price, or consideration therein reserved."

The original contract between the plaintiff and Mallory in

respect to the sale of horses is within this statute and governed by it. The manifest object of the statute is to place such contracts on the footing of chattel mortgages; and if a contract of that kind is not reduced to writing and filed in the proper office, it is void as to third persons, and the property affected by it in the possession of the vendee is liable to seizure as his property on an execution issued upon a judgment against him. The circuit judge so instructed the jury, and the instruction is favorable to the defendant.

Hence, so far as the execution creditors of Mallory (whom the defendant represents) are concerned, Mallory was the absolute owner of the property in controversy down to the time of the transactions between him and the plaintiff in October, after Mallory had failed to make the first payment on the horses. But these transactions changed their relations. As between themselves, the original contract was thereby terminated, and the plaintiff became the absolute owner of the property in controversy, and could have taken it at any time and held it against Mallory. It is quite immaterial that the horses delivered by Mallory to the plaintiff in October were afterwards exchanged for other horses. The plaintiff's title to the latter attached immediately upon such exchanges, on the familiar principle, that if A. exchanges the property of B. for other property, the title to such other property is in B., if he elects to ratify the trade.

It follows that when the defendant seized the property, it belonged absolutely to the plaintiff, as between him and Mallory. Can the plaintiff hold the property against an execution creditor of Mallory?

We have seen that the transactions of October between Mallory and the plaintiff were equivalent to an absolute sale of the property by the former to the latter. But such sale, although accompanied by an immediate actual delivery of the horses and a constructive delivery of the wagon to the vendee, was not followed by an actual and continued change of pos-

session of the property sold, and is therefore presumptively fraudulent and void as against the creditors of the vendor. The burden is upon the plaintiff to prove that the purchase was made by him in good faith and without any intent to defraud the creditors of Mallory. R. S., ch. 107, sec. 5.

It seems to us that the plaintiff has fully met the requirements of the statute by uncontroverted evidence. The sale was made in pursuance of the original agreement of the parties to it, to the effect that the plaintiff should have the property if Mallory failed to pay for the horses; and the reasons disclosed for leaving the property in the possession of Mallory are entirely satisfactory. Moreover, when the plaintiff became the owner of the property in October, the execution creditors had not obtained their judgment against Mallory; the plaintiff did not know that they had an action pending against him; and it does not appear that they were then creditors of Mallory, or that the latter owed a dollar to any person other than the plaintiff, and his indebtedness to plaintiff was canceled by their October agreement. Under these circumstances, we think it is a verity in the case that the agreement in October was made in good faith by the plaintiff, and without any intent on his part to defraud any one.

It necessarily follows from the views above expressed, that the judge might properly have directed the jury to return a verdict for the plaintiff. Such being the case, it is quite immaterial whether the instructions are strictly accurate in every respect. If there is error in them, it cannot possibly prejudice the defendant, since the jury could not have found otherwise than for the plaintiff. *Balliet v. Scott*, 32 Wis., 174; *Andrews v. Jenkins*, 39 id., 476.

It only remains to consider the objection to the sufficiency of the verdict. It will be observed that the verdict is special, there being no general verdict for the plaintiff, and that there is no express finding that the defendant unlawfully detains the property. This is the objection taken to the verdict.

In the recent cases of *Hutchinson v. The C. & N. W. R'y Co., McNarra v. The Same,* and *McHugh v. The Same,*\* it was held that a judgment on a special verdict will not be reversed for failure of the jury to find upon any of the issues, if the uncontradicted evidence proves the issue in favor of the prevailing party. In the present case, the defendant in his answer admits the taking of the property, and the undisputed evidence proves that it was duly demanded by the plaintiff, and delivery thereof refused, before the action was commenced. It is thus settled that the defendant detains the property from the plaintiff; and the finding that the latter is the owner and entitled to the possession thereof, demonstrates that such detainer is unlawful. Within the rule of the above cases, the omission complained of cannot prejudice the defendant, and is not, therefore, ground for disturbing the judgment.

*By the Court.* — Judgment affirmed.

---

\* All these cases will be found in the present volume.