Eberhardt vs. Sanger.

## EBERHARDT vs. SANGER.

*December 21, 1880 — January 11, 1881.*

TRIAL. *(1, 2) Questions for special verdict. (3) Misleading instructions.*

1. This court is inclined to hold that the "questions in writing relating only to material issues of fact," to be submitted to the jury under section 2858, R. S., should be limited to the controverted facts put in issue by the pleadings, or such as might properly have been so put in issue; but it does not so decide.

2. Even if that is not the proper construction of the statute, the submission of thirty-seven questions to the jury in this case, touching facts very few of which were put in issue by the pleadings, and most of which were mere items of evidence, and several of which were admitted, was error.

3. Where the facts put in issue by the pleadings are capable of being proved by circumstantial evidence, it is error, as tending to mislead the jury, to charge them, without qualification, that each item of evidence or group of circumstances, naturally tending to prove such fact, does not "establish" the same.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action for damages for an unlawful taking and conversion of chattels. There was a special verdict, and also a general verdict for the plaintiff; the court refused to grant a new trial, and rendered judgment in accordance with the general verdict; and defendant appealed from the judgment.

The case is further stated in the opinion.

For the appellant there was a brief by *Cotzhausen, Sylvester & Scheiber*, and oral argument by *Mr. Scheiber*.

Eberhardt vs. Sanger.

For the respondent there was a brief by *Austin & Runkel,* and oral argument by *Mr. Austin.*

CASSODAY, J. The complaint alleged that the defendant unlawfully took from the possession of the plaintiff, and carried away, certain property of the plaintiff of the value of $1,800, and converted the same to his own use, and that by reason thereof the plaintiff had sustained $4,000 damages.

The answer contained a general denial, and alleged that Francis Meixner was at the time the owner of the property, and that the same was taken by defendant as sheriff of Milwaukee county upon an execution issued to him August 28, 1877, upon a judgment previously rendered against Meixner, subject to a chattel mortgage of $375 upon a portion of the goods in favor of Peitsch, which goods had been taken from him upon the mortgage.

Upon the trial, the plaintiff admitted that he obtained the property from Meixner upon a bill of sale, executed, bearing date and delivered June 16, 1877, expressing a consideration of $3,000, covering all the property then used or kept by Meixner in his business; that he had thereby assumed the chattel mortgage to Peitsch; that he paid nothing down, but released a chattel mortgage of $700 on the goods, held by himself; that the next day he gave to Meixner his four notes for the balance ($1,925), payable one, two, three and four years from date; and that afterwards, on the same day, he learned that Schmidt also had a chattel mortgage on the goods for $300, which Meixner had forgotten to mention, and so he assumed that also, and one of the notes so given was thereupon destroyed, and another given in its place, so that the final balance to be paid by the plaintiff, as represnted by the notes, was $1,625, payable as above stated.

Thus the issue presented was, whether the sale from Meixner to the plaintiff was made with the intent to defraud the then existing creditors of Meixner, including the plaintiffs in

the execution. Upon that issue the trial court required the jury to answer thirty-seven distinct questions submitted to them. The statute provides that such special verdict "shall be prepared by the court in the form of questions in writing, relating *only to material issues of fact*, and admitting a direct answer, to which the jury shall make answer in writing." Section 2858, R. S.

In *Hutchinson v. R'y Co.*, 41 Wis., 552, it was held, per LYON, J., that, "in the absence of a general verdict, the special findings should include all of the material issues made by the pleadings;" and in the same case it was in effect held, that undisputed questions of fact did not constitute a material issue. *Williams v. Porter*, 41 Wis., 422; *McNarra v. R'y Co.*, id., 69.

In *Davis v. Farmington*, 41 Wis., 431, LYON, J., said that the right to a special verdict under this statute was "necessarily limited to material and controverted questions of fact."

In *Carroll v. Bohan*, 43 Wis., 218, RYAN, C. J., said: "The statute providing for special verdicts is an excellent one, tending to dispel the occasional darkness visible of general verdicts. But special verdicts are worse than useless if courts do not submit for them single, direct and plain questions, and insist upon positive, direct and intelligible answers."

In *Ward v. Busack*, 46 Wis., 407, eighteen questions were submitted, and error was alleged because the trial court did not submit one more; but TAYLOR, J., said: "From our knowledge of the nature of the special verdicts which have come under the consideration of this court, we believe we are justified in saying that the tendency of some of the profession, in making use of the law which requires that a special verdict shall be rendered whenever demanded, to abuse it by demanding that the jury shall answer an infinite series of questions, the object and tendency of which is to confuse, embarrass and confound the jury, instead of eliciting the facts upon which the rights of the parties depend, needs the restraining hand of the judges

presiding at the circuits; and that this court will take pleasure in sustaining such judges in every proper effort to make a special verdict a concise statement of the real facts at issue in the case. . . . A special verdict which disposes of all the litigated issues in an action, is sufficient. What is admitted by the pleadings need not be found in the verdict."

In *Cotzhausen v. Simon*, 47 Wis., 103, ORTON, J., aptly said: " It is to be regretted that, in a case of so much importance and so fully and ably tried, the findings are so defective, imperfect and irrelevant."

In *Blesch v. R'y Co.*, 48 Wis., 168, there were but two questions for the consideration of the jury, one of which was the location and operation of the road, and the other the consequent damages; and yet thirteen questions were submitted. TAYLOR, J., speaking for the court, said: " Upon the whole record we are satisfied that the case was fairly tried upon the merits up to the point where the same was submitted to the jury; and we regret that we are compelled to reverse this judgment on account of irregularities which occurred in procuring the final verdict of the jury. This case presents a gross perversion of the statutory right of a party to a special instead of a general verdict. . . . The third question put by the court, and the fifth one put by the plaintiff, covered the whole question of damages. All the others, by both the plaintiff and defendant, were questions strictly in the nature of an examination of the jury to ascertain what elements of damage they considered in making up the gross damage, and requiring them to fix a definite sum allowed by them for each of these elements. This examination of the jury tended only to confuse and embarrass, without in any manner aiding them or the court in arriving at a true verdict. The result of the process in this case is a clear demonstration of the perniciousness of the practice." And then, after referring to the statute, he said: " We suggest that the learned circuit judges, in taking special verdicts, should adhere to the directions of this

statute, . . . and submit only such as relate to the material issues, and rigorously exclude all questions which have no other object than to obtain from the jury reasons which actuate them in finding such material facts. . . . We have been constrained to make these strictures . . . because the vicious practice in this case has been highly prejudicial to the interests of the parties litigant, and furnishes a favorable opportunity to urge upon the bench and bar the necessity of a greatly-needed reformation of the practice in this particular."

In *Singer Manuf'g Co. v. Sammons*, 49 Wis., 316, it was held that there was no error in refusing to submit immaterial questions.

These references to and quotations from the decisions of this court are made, not only because they are applicable to the special verdict in this case, but by way of remembrance of the position so often taken by this court. Here the pleadings really put in issue but two material issues of fact, and yet the jury were required to answer thirty-seven questions. Several of these questions were undisputed, and hence not "material issues of fact" for the jury, within the meaning of the statute, as frequently held by this court. In fact, the word "only" in the statute was apparently inserted for the very purpose of prohibiting the court from submitting any undisputed, immaterial or irrelevant questions. Several of the questions here presented were mere items of evidence, tending to prove or disprove some material "issue of fact." Of course, in the trial of cases many questions are put to witnesses which are material because the answers may tend to prove or disprove some issuable fact; but it does not follow that every question so put to a witness is in itself a "material issue of fact;" and to submit each of such questions to a jury by way of special verdict would, in many cases, elicit from them nothing more than an abstract of the evidence. "An issue of fact," says Blackstone, "is where the fact only, and not the law, is disputed, and when he that denies or traverses the fact *pleaded*

Eberhardt vs. Sanger.

by his antagonist, has tendered the issue." 3 Black. Com., 215. "An issue is when both the parties join upon somewhat that they refer to a trial, to make an end of the plea." 1 Chitty Pl., 235, note. So the defendant may raise a "collateral issue," as, for instance, the identity of the prisoner, and have a separate trial upon it. 4 Black. Com., 396. Under the old system of pleading, in actions at law, the pleader was not always required to state the facts; but now every pleading, whether such as was formerly denominated at law or in equity, must contain a statement of the facts relied upon, or a denial of the same. In other words, the pleadings under the code directly put in issue all the material facts. When, therefore, the section in question directs that special verdicts shall be submitted to the jury "in the form of questions, in writing, relating only to material issues of fact," it would seem to limit such questions to such facts as are controverted and put in issue by the pleadings, or, at most, to such as might properly have been put in issue by the pleadings — i. e., issuable facts in contradistinction to mere evidence. Such a rule would very much simplify the practice, and serve as a permanent guide to bench and bar; but as it was not discussed by counsel in this case, and does not appear to have been raised in the cases above referred to, and is not essential to the decision in this case, though directly involved, we will withhold our decision upon it for the present. Assuming that it was discretionary with the trial court whether to submit to the jury questions of fact not disputed, and not put in issue by the pleadings, yet we are convinced that the submission of the thirty-seven questions in this case was an abuse of discretion. The word "discretion," as used in the section, however, seems to relate to the submission of questions without any "request" of counsel, and not to the number, scope or nature of the questions submitted. Of course, within the limits of the statutory requirements, there is necessarily implied a large discretion in the trial court, with which this court would not be inclined to

interfere.   It is true that twenty-nine of the questions, many
of which are open to the objections indicated, were submitted
at the request of the party now seeking to reverse the judg-
ment.   To reverse in favor of a party by reason of errors
committed at his request, would be contrary to well-estab-
lished rules of practice, however much they may have tended
to confuse the jury.   For these reasons we have had some
doubt whether we ought to reverse this judgment, notwith-
standing we are clearly of the opinion that there was a mis-
trial on account of the nature and multiplicity of questions
submitted, and some of the instructions given.   If the errors
were confined to the twenty-nine questions submitted at the
request of the appellant, we should probably not do so; but
here it is otherwise.

To prove fraud in a given case by direct and positive evi-
dence may be, and frequently is, impossible, and yet in the
same case it may be clearly proven by circumstantial evidence.
Circumstantial evidence, as defined by Greenleaf (§ 13), is
where "the proof applies immediately to collateral facts, sup-
posed to have a connection, near or remote, with the fact in
controversy."  To separate the several items of evidence going
to make up the chain of circumstances or collateral facts which
force the conviction of fraud, in such a case, and to submit to
the jury each of such items of evidence or collateral facts as
a separate and independent fact, under instructions that such
fact, standing alone, did not "establish" fraud, but without
any instruction that each of such collateral facts was evidence
tending to prove fraud, or that such facts combined might
prove fraud, would, by inference, be charging the jury that
fraud could not be established by circumstantial evidence.
We are of the opinion that some of the instructions given are
properly subject to these criticisms.   By the third instruction,
given at the request of the plaintiff, the jury were told that
the *mere* fact that Meixner was largely indebted does not im-
peach the title of the plaintiff, and does not make the sale

void.  By the fifth they were told that even if Meixner was largely indebted, and the plaintiff knew of such indebtedness, yet that was not *sufficient* to make the sale fraudulent.  By the sixth they were told that a *bona fide* purchase made by a creditor from his debtor, who is in failing circumstances, is not fraudulent *simply* because the consideration was a pre-existing debt and a promissory note *bona fide* given.  By the seventh they were told that the *mere* fact of a sale, by a person in failing circumstances, upon credit, to one who has *knowledge* of his circumstances, does not "establish" fraud.  By the eighth they were told that the *mere* fact that Meixner, at the time, was in failing circumstances, and sold to the plaintiff for the cancellation of his mortgage and the assumption of the Peitsch and Schmidt mortgages, and the giving of his own notes due in one, two, three and four years, though the plaintiff *had knowledge* of Meixner's failing circumstances, does not "establish" fraud.  By the ninth they were told that the *mere* fact that Meixner and wife signed an agreement, whereby they agreed with the execution creditors not to sell or mortgage their property until after their drafts should be paid, even though the agreement was filed with the city clerk, and the drafts not paid, does not "establish" fraud, and does not make the sale to the plaintiff void.  It is unnecessary to analyze these different instructions, or to state how far each may be upheld as an abstract proposition of law.  It may be that several of them, standing alone and abstractly considered, do no violence to any legal principle; although we have grave doubts as to some, especially the eighth.  The use of the word "establish" seems to have been especially unfortunate.  The word ordinarily means, to settle firmly—to fix unalterably; and in this sense the instruction would be equivalent to saying that the facts recited were not conclusive evidence of fraud.  In this sense it was peculiarly inapplicable.  It was unnecessary for the plaintiff to furnish conclusive evidence, and yet, from the instruction, the jury might well infer that it was

essential for him to do so. The question is, whether these instructions, given, as they were, without qualification, did not tend to mislead the jury. We are clearly of the opinion that they did. While the collateral facts or circumstances recited in each might not, of themselves, "establish fraud," yet it is quite evident that they tended, more or less strongly, to prove fraud; and it seems to us that the instructions should have been differently worded, or that there should have been some qualification, either as to each of such instructions or generally as to all. In other words, the case was submitted in such a way as would naturally mislead the jury.

At the request of the plaintiff the jury found that, at the time of the sale, Meixner was "largely indebted," but that the plaintiff did not "have knowledge of the fact that Meixner was *largely* indebted." The jury having found that Meixner was "largely indebted," and that the plaintiff discharged his own mortgage of $700, and assumed the Peitsch and Schmidt mortgages, amounting to $675 more, was equivalent to finding that the plaintiff had actual knowledge, at the time of the sale, of $1,375 indebtedness; and yet they find that he did not know he was "largely indebted." Whether the jury intended to find that $1,375 was all the indebtedness of which the plaintiff had any knowledge, or whether it was some larger amount, but less than Meixner's entire indebtedness, it is impossible to tell.

In conclusion, we would state that, (1) we are inclined to the opinion that the "questions in writing relating only to material issues of fact," to be submitted to the jury under section 2858, R. S., should be limited to the controverted facts put in issue by the pleadings, or such as might properly have been put in issue by the pleadings; but we withhold any decision upon this point, for reasons stated. (2) Even if such is not the proper construction, yet the submission of thirty-seven questions to the jury in this case, only very few of which were put in issue by the pleadings, and most of which were mere items

of evidence, and several of which were admitted, was error. (3) When the facts put in issue by the pleadings are capable of being proved by circumstantial evidence, it is error to charge the jury, without qualification, that each item of evidence, or group of circumstances, naturally tending to prove such fact, does not "establish" the same, as it tends to mislead the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.