Farwell and others vs. Warren.

FARWELL and others, imp., Respondents, vs. WARREN, Appellant.

*February 28 — April 29, 1890.*

*(1-3) Debtor and creditor: Chattel mortgage void as to one of several mortgagees: Attachment: Replevin: Judgment. (4) Special verdict: Undisputed fact not found.*

1. Where a chattel mortgage is given to the mortgagees jointly to secure the amount of the separate indebtedness of the mortgagor to each, they take as tenants in common of the property, each having an undivided interest in proportion to his claim; and the fact that as to one of them the mortgage is fraudulent and void as against the creditors of the mortgagor, does not render it void as to the other mortgagees.

2. But in such case the interest of the fraudulent mortgagee is subject to attachment by creditors of the mortgagor; and an officer who has seized, under such an attachment, the entire interest in a portion of the property, instead of an undivided interest in the whole, will stand in the place of the fraudulent mortgagee as a tenant in common with the other mortgagees.

3. Where the property so seized by the officer has been replevied and sold, together with the rest of the mortgaged property, by the mortgagees, such officer is entitled to judgment in the replevin suit for the amount of the attachment lien, not exceeding the interest of the fraudulent mortgagee in the whole property or the value of the portion replevied.

4. Any fact which is established by the undisputed evidence on the trial may be considered as a part of the special verdict, for the purpose of rendering judgment on such verdict.

APPEAL from the Circuit Court for *Fond du Lac* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The material facts in this case are as follows: In January, 1887, R. Goldston, a married woman, set up the business of a dry-goods merchant in Fond du Lac. The business was conducted mainly by Albert Goldston, her husband, as her general agent. In February, 1888, Mrs. Goldston seemed to be somewhat embarrassed in her business, and, after consulting some of her creditors in Chicago, and in order to enable her to continue her business and obtain credit for more goods to carry on her business, she mortgaged her stock of merchandise to the respondents *J. V. Farwell & Co., Sarah Assenheim, A. Lewin & Son,* and S. Goldston. The mortgage was dated February 27, 1888. The following is a copy of the mortgage, excluding the schedule, setting out particularly the indebtedness of the mortgagor to the respective mortgagees, viz.:

"Know all men by these presents, that I, Rebecca Goldston, by Albert Goldston, my attorney in fact, residing in Fond du Lac, county of Fond du Lac, state of Wisconsin, for the purpose of securing the payment of the sums of money hereinafter mentioned, and in consideration of one dollar to me in hand paid, the receipt of which is hereby acknowledged, do by these presents bargain, sell, assign and set over unto *Sarah Assenheim,* S. Goldston, *A. Lewin & Son,* and *J. V. Farwell & Co.,* all of Chicago, Ill., all

Farwell and others vs. Warren.

the following described goods, chattels, and personal property, to wit:

"All and singular, the stock of dry goods, notions, fancy goods, gents' furnishing goods, cloaks and shawls, together with the fixtures, now located in the store No. 464 Main street, Fond du Lac, Wis., as more fully set forth in a list thereof contained in Schedule A, which is hereunto annexed and made a part hereof; said property situated and being now at No. 464 Main street, in the city of Fond du Lac and county of Fond du Lac and state of Wisconsin, and now free and clear from any prior lien or incumbrance, and being in possession of said mortgagor, and to remain in her possession until the same shall be taken possession of by said mortgagee as hereinafter provided."

"To have and to hold the same forever, upon condition that if said mortgagor shall pay to said mortgagees the sum of eleven thousand and twenty-three dollars and forty cents ($11,023.40) which said sum falls due at the times, in the manners, and to the parties mortgagee, as appears by Schedule B, which is hereunto annexed and made a part hereof, then these presents shall cease and be void. But in case of any default in making such payment or any part thereof at the time above agreed on, or in performing any conditions hereof, the said mortgagees are hereby authorized and empowered, with the aid and assistance of any person or persons, to enter into or upon any place where said mortgaged property may be, and take possession of said mortgaged property and convey it away, and to sell and dispose of the same at private sale without notice, or at public sale after giving five days' notice of time and place of such sale, in their discretion, or so much thereof as may be necessary to satisfy the said debt and interest and all costs and expenses in taking, keeping, and disposing of said property, and to retain the same out of the proceeds of said sale, rendering the surplus, if any, to

said mortgagor. And, in case the said mortgagees shall at any time deem the said property or the said debt insecure, they are hereby authorized and empowered to take immediate possession of said mortgaged property, or any part thereof, and to sell and apply the proceeds as above provided.

"The provisions of this instrument shall extend and apply to the heirs, executors, administrators, and assigns of the respective parties.

"In witness whereof I have hereunto set my hand and seal this 27th day of February, A. D. 1888.

"REBECCA GOLDSTON, [SEAL.]

"By my attorney in fact,

"ALBERT GOLDSTON. [SEAL.]

"Executed and delivered in presence of OWEN A. WELLS.

"I hereby ratify and confirm the within mortgage this 27th day of February, 1888.          REBECCA GOLDSTON.

"In presence of OWEN A. WELLS."

After this mortgage had been duly executed and filed in the proper office, and on the 29th day of February and the 1st day of March, 1888, the appellant, as sheriff of Fond du Lac county, by virtue of several writs of attachment issued out of the circuit court of Fond du Lac county in actions commenced by other creditors of R. Goldston against her, levied upon and took into his possession as such sheriff, by virtue of said writs, a part of the stock in trade of said Goldston which had been mortgaged to the parties above named by the said mortgage above referred to. The value of the property so seized by said sheriff upon said writs was the sum of $4,800 or thereabouts.

While the said sheriff held said property by virtue of said writs of attachment, and on the 2d day of March, 1888, this action of replevin was commenced by the mortgagees in said mortgage to recover the possession of said goods so held by said sheriff. The plaintiffs in the replevin action

base their right of recovery upon the mortgage above set forth; and, upon making the proper affidavit and giving the proper security, the said property was taken from the possession of the sheriff, and delivered to the plaintiffs in the replevin action. In this action the defendant set up his right to the property by virtue of said writs of attachment, denied the plaintiffs' right to the possession of the same, and set up that the said mortgage by virtue of which the plaintiffs claimed the right to said property was fraudulent and void as to the creditors in said attachment actions.

Upon the trial of the action in the circuit court the jury rendered a special verdict. The first eight questions submitted to the jury find the amount of the indebtedness of Mrs. Goldston to each of the mortgagees at the time she gave the mortgage to secure such indebtedness to be as follows: *J. V. Farwell & Co.*, $2,695.22; *A. Lewin & Son*, as indorsers, $3,136.09; *Sarah Assenheim*, $2,000; S. Goldston, $3,192.09; whole amount of indebtedness to mortgagees at the date of the mortgage, and which sum the mortgage was given to secure, $11,023.40. Questions 9, 10, 11, 12, and 13 affirm that the mortgagees severally accepted the mortgage before the defendant's writs of attachment were served. The other questions of the special verdict and their answers were as follows, viz.: "(14) Did the plaintiffs *J. V. Farwell & Co.* accept and take such mortgage with the intent to hinder, delay, or defraud the creditors of the mortgagor, R. Goldston? *Answer.* No. (15) Did the plaintiffs *A. Lewin & Son* accept and take said mortgage with the intent to hinder, delay, or defraud the creditors of the mortgagor, R. Goldston? *A.* No. (16) Did the plaintiff S. Goldston accept and take said mortgage with the intent to hinder, delay, or defraud the creditors of the mortgagor, R. Goldston? *A.* Yes. (17) Did the plaintiff *Mrs. Sarah Assenheim* accept and take said mortgage with

the intent to hinder, delay, or defraud the creditors of the mortgagor, R. Goldston? *A.* No. (18) Did said mortgagor, R. Goldston, make and ratify said mortgage with the intent to hinder, delay, or defraud her creditors? *A.* Yes. (19) Did Albert Goldston, as agent of said R. Goldston, sign and execute said mortgage with the intent on his part to hinder, delay, or defraud the creditors of R. Goldston? *A.* Yes. (20) Did any of the plaintiffs, at the time they took and accepted the mortgage in question, know that said R. Goldston made the same with the intent to hinder, delay, or defraud her other creditors? If you answer, 'Yes,' state the names of such plaintiffs. *A.* Yes. S. Goldston. No, as to all other plaintiffs. (21) Did any of the plaintiffs, at the time of the taking of the mortgage, have knowledge of the facts sufficient to put an ordinarily cautious and intelligent person on inquiry, and which, if acted upon and investigated, would have enabled them to have known that the mortgage was made with the intent to hinder, delay, or defraud the creditors of R. Goldston? If you answer, 'Yes,' then state the names of such plaintiffs. *A.* Yes. S. Goldston. No, as to all other plaintiffs. (22) At the time of making the mortgage or levying of the attachments, was there any agreement or understanding between any of the plaintiffs and the mortgagor that said mortgagor, instead of applying the proceeds of the sale of the mortgaged property to the payment of the debts thereby secured, and the necessary expenses of selling, might take and use the proceeds of such sales for her own use and benefit? If you answer, 'Yes,' state the name or names of the plaintiffs consenting to such understanding. *A.* No. (23) At the time of making the mortgage or the levying of the attachments, was there an understanding or agreement between any of the plaintiffs and the mortgagor that the mortgagor might take and use the proceeds of the sale of the mortgaged property to purchase and pay for new goods to be added to the stock?

If you answer, 'Yes,' state the name or names of the plaintiffs so consenting to such understanding. *A.* No." There are four other questions, answered by the court, fixing the several amounts due to the several attaching creditors at the time of receiving said special verdict.

Upon the receipt of the special verdict the defendant duly moved "for judgment against the plaintiffs upon all the records, files, testimony, pleadings, exceptions, and special verdict in the case, in accordance with the demand of the answer herein." This motion was denied, and the defendant excepted. The defendant then moved "that the special verdict be set aside as inconsistent with the evidence." This motion was also denied, and defendant duly excepted; and thereupon the counsel for defendant moved "that the special verdict be set aside as contrary to law and the evidence." This motion was also denied, and defendant excepted. The defendant then moved "for judgment notwithstanding the special verdict." This was also denied, and defendant excepted. Afterwards the court rendered judgment in favor of the plaintiffs, except S. Goldston, adjudging that said plaintiffs *Farwell & Co., Lewin & Son*, and *Sarah Assenheim* recover possession of the property described in the complaint in the action, with six cents damages and $124.84 costs, and further adjudged that the defendant have judgment against the plaintiff S. Goldston for his costs and disbursements, taxed at the sum of $170.41. To this judgment the defendant filed several exceptions, and appealed therefrom to this court.

For the appellant there were briefs by *Colman & Sutherland*, and oral argument by *D. D. Sutherland*. They contended, *inter alia*, that if the mortgage was void as to one of the mortgagees it was void as to all. *Myrick v. Dame*, 9 Cush. 248; *Gaar, Scott & Co. v. First Nat. Bank*, 20 Bradw. 611; *Russell v. Winne*, 37 N. Y. 591; *Goodrich v. Downs*, 6 Hill, 438; *Hyslop v. Clarke*, 14 Johns. 458;

*Denny v. Dana,* 2 Cush. 160; *De Beerski v. Paige,* 36 N. Y. 537; *Wilson v. Voeght,* 13 Pac. Rep. (Col.), 726; *U. S. v. Bradley,* 10 Pet. 343; *Lambeth v. McClinton,* 65 Tex. 108; *Hammond v. Hopping,* 13 Wend. 511; *Jackson v. Packard,* 6 id. 415; *Williams v. Fitzhugh,* 37 N. Y. 444; *Hammers v. Dole,* 61 Ill. 307; *Adams v. Niemann,* 46 Mich. 135. All the mortgagees were compelled to unite in bringing this action. *Welch v. Sackett,* 12 Wis. 243; *Durfee v. Grinnell,* 69 Ill. 371; *Earll v. Stumpf,* 56 Wis. 50. Where plaintiffs have such an interest in common under one instrument that they are compelled to sue jointly, a release by one plaintiff releases all. *Austin v. Hall,* 13 Johns. 286; *Decker v. Levingston,* 15 id. 478. "As a general rule when a contract is made to two jointly, each can release or destroy the contract so that no action can be sustained upon it." *Murdock v. Chenango Co. M. Ins. Co.* 2 N. Y. 210; *Marsteller v. M'Clean,* 7 Cranch, 156; *Myrick v. Dame,* 9 Cush. 248.

For the respondents there was a brief by *D. Babcock,* attorney, and *Owen A. Wells* and *T. W. Spence,* of counsel, and the cause was argued orally by *Mr. Wells* and *Mr. Spence.*

The following opinion was filed March 18, 1890:

TAYLOR, J. Upon the hearing of this appeal the learned counsel for the appellant assign as errors that the circuit judge erred in several of his instructions to the jury, and also in refusing to give certain instructions requested by the defendant; that the court erred in refusing to give the defendant judgment upon the special verdict, and in refusing to set aside the verdict. As we have come to the conclusion that the judgment is not supported by the special verdict, we do not feel called upon to determine the other questions raised by the counsel for the appellant.

It was urged with a good deal of force by the counsel

for the appellant that, as the mortgage was made jointly to all the mortgagees, to secure the whole sum of $11,023.40, and that, as the jury had found that as to a part of said sum of $10,023.40 the mortgage was void as to creditors, therefore it was void as to the whole amount. We think in this proposition the counsel is not sustained by authority or principle. Although the mortgage is given to the mortgagees jointly, yet it is clear from the whole mortgage that it was given to secure the amount of the separate indebtedness of the mortgagor to each of the mortgagees. In such case, the authorities show that the persons named as mortgagees in the mortgage do not take as joint tenants, but as tenants in common; each taking an undivided interest, as tenants in common of the property conveyed by the mortgagee in proportion to their respective debts. Herm. Chat. Mortg. § 143, p. 357; *Donnels v. Edwards*, 2 Pick. 617; *Tyler v. Taylor*, 8 Barb. 585; *Howard v. Chase*, 104 Mass. 249; *Hubby v. Hubby*, 5 Cush. 516; *Burnett v. Pratt*, 22 Pick. 556; *Welch v. Sackett*, 12 Wis. 243; *Tallman v. Barnes*, 54 Wis. 181; *Earll v. Stumpf*, 56 Wis. 50; *Alderson v. Schulze*, 64 Wis. 460; Jones, Chat. Mortg. (3d ed.), § 50. The fact, therefore, that the conveyance is void as to one of the co-tenants furnishes no reason for holding that it is void as to the other co-tenants. If there had been separate mortgages to each creditor, mortgaging to him an undivided interest in the property in proportion to his debt due, there could be no pretence for holding any one of such mortgages void because some one or more of the other mortgages were fraudulent and void as against creditors. Under the construction which the law gives to a mortgage of the character of the one in this case, it is the same as though there were separate mortgages, covering each an undivided interest in the mortgaged property in the proportion of each separate debt to the amount of all the debts mentioned in the mortgage. The only case we have

found which seems to approve of the contention of the learned counsel for the defendant upon this point is the case of *Adams v. Niemann*, 46 Mich. 135, 136; but in the case of *Walker v. White*, 60 Mich. 427, that court seems to hold with the other authorities above cited and as we are disposed to hold in this case, viz., that the fraudulent character of the mortgage, so far as it was given to secure the debt due to S. Goldston, does not necessarily make the mortgage void as to the other mortgagees. In 60 Mich. *supra*, the court say: " It does not seem equitable that the remaining *bona fide* creditors of the firm, who took this security for the very proper and legitimate purpose of securing their honest claims, should lose their security because of the illegal attempt of Taylor to secure his benefactor; and under the authorities we think this joint mortgage, by its terms and conditions, can be treated in law the same as separate securities or mortgages of the different creditors filed at the same time."

The learned counsel for the appellant also contend that, as it was shown by the testimony and found by the jury that the mortgage was fraudulent and void as to the creditors of R. Goldston, as to the undivided interest of the property mortgaged to said S. Goldston, that interest was therefore subject to the attachments of the creditors of R. Goldston, and that the sheriff, representing said creditors, had the right, under his writs, to attach such undivided interest, and sell the same to pay the debts due to the creditors of Mrs. R. Goldston whom he represented. There could be no question as to the right of the sheriff to have seized, by virtue of his writs of attachment, the undivided interest covered by the mortgage of said S. Goldston, claiming that the mortgage was void as to such interest; and, having shown the fraudulent character of such mortgage on the trial as to such undivided interest, he would have been entitled to a verdict in his favor for the amount of

his attachments, if it had been shown that such undivided interest was of sufficient value to cover the amount of the debts due to the attaching creditors. Have the creditors, and the sheriff representing them, lost all right to claim any share in the goods mortgaged because he seized the entire interest in a portion of the goods, instead of an undivided interest in the whole of them? We think not. The creditors represented by the sheriff should stand in the same situation in regard to the goods mortgaged to S. Goldston that he would have stood in as to the other mortgagees had he taken possession of a part of the goods mortgaged, and threatened to sell them to pay the amount due to him on the mortgage. At the common law, in such case, no action at law could have been maintained against the co-tenant for such seizure. See *Welch v. Sackett*, 12 Wis. 243; *Tallman v. Barnes*, 54 Wis. 181; *Earll v. Stumpf*, 56 Wis. 50; and *Alderson v. Schulze*, 64 Wis. 460.

In this action, however, all the tenants in common of the mortgaged property have joined in an action of replevin to recover the whole property taken possession of by the sheriff for the creditors. The action was properly commenced against the sheriff, and, if the plaintiffs had established their title to the whole of the property taken by the sheriff, or to the whole of any particular part thereof, they would have been entitled to recover for the whole thereof, or for the whole of that part of the property taken by the sheriff to which they established title. But upon the trial they established title to only an undivided interest in said property owned by three of the plaintiffs in replevin, and as to the undivided interest owned by the fourth mortgagee they fail to establish their title; and, on the other hand, the sheriff establishes his title to such undivided interest of the co-plaintiff. Upon the facts found by the special verdict, the plaintiffs have failed to establish their title to the whole property, and as to an undivided interest therein the

defendant has shown title. We think the defendant must be held to stand in the place of their co-tenant S. Goldston; and their rights as against the sheriff are no greater than they would have been had Goldston taken possession of a part of the mortgaged property, claiming such possession as a tenant in common with the plaintiffs for the purpose of securing his debt mentioned in the mortgage.

Under the rules of law antecedent to the Code, the plaintiffs would fail entirely in their action, and the defendant would be entitled to a judgment for the return of the property taken on the writ of replevin, or for its value, provided such value did not exceed the amount of the attaching creditors' claims. And under the Code the plaintiffs also fail in their action as to that part of the mortgaged property belonging to S. Goldston, the fraudulent mortgagee. As it is quite evident from the testimony in the case that all the mortgaged property has been sold or otherwise disposed of so that the defendant cannot in any event recover any part thereof in specific articles, and that his right as against the plaintiffs must be a right to a money judgment either for the amount of the attachment liens, or for the value of the undivided interest of the mortgaged property conveyed to S. Goldston, if such undivided interest be less than such attachment liens; and as in an action of replevin under our statute when the plaintiff obtains possession of the property replevied and sells or destroys it, so that the property cannot be returned to the defendant, and on the trial the defendant establishes a right to the property, the defendant is entitled to a money judgment against the plaintiff for the value of the property replevied, or to the amount of his liens upon such property, if he held possession by virtue of such liens, not exceeding the actual value of the property replevied,— see sec. 2888, R. S.; *Pratt v. Donovan,* 10 Wis. 378; *Morrison v. Austin,* 14 Wis. 601; *Lanyon v. Woodward,* 65 Wis. 543; *Booth v. Ableman,* 20

Wis. 21; *Warner v. Hunt*, 30 Wis. 200; *Union Lumbering Co. v. Tronson*, 36 Wis. 126,—there does not seem to be any good reason why the court should not, in such action, render a final judgment which will settle the real rights of the parties to the property in question, and not render a judgment which would only partially settle their rights and leave it open for future litigation.

The special verdict in this case has found all the facts necessary to adjust the rights of the respective parties except one. The verdict finds the whole amount of the debts of the respective parties which the mortgage was given to secure, the amount of each of the several debts due to the respective mortgagees, the amount of the claims of the several attaching creditors against the mortgagor at the date of the trial, and has also found that the mortgage was fraudulent and void so far as it attempted to secure the debt due S. Goldston; and the pleadings in the case admit that the value of the property actually replevied in this action from the defendant is $4,851.90. And from these facts found and admitted the law makes the several creditors of R. Goldston, to whom the mortgage was given, tenants in common of the mortgaged property in the exact proportion that their several debts bear to the amount of all the debts secured by the mortgage. The special verdict shows that S. Goldston was a tenant in common with the other plaintiffs of the mortgaged property of an undivided 3192–11,023 of such property. And, as we understand the law, the mortgage being void as to the creditors of R. Goldston represented by the defendant as to the mortgage interest of S. Goldston, the exact right or interest of said creditors in the mortgaged property is 3192–11,023 of the whole property mortgaged, provided the value of said 3192–11,023 interest does not exceed the amount of the attaching creditors' debts at the time of the trial; but, if such 3192–11,023 interest be of greater value than the attach-

ing creditors' debts at the time of the trial, then the defendant's interest in the property would be limited by the amount of said debts, and he would be entitled to judgment for such amount only. The only thing wanting in the special verdict upon which a final and just judgment could be entered is the value of the whole of the mortgaged property at the time the plaintiffs took possession thereof under their mortgage. If that fact were found, there would be nothing in the way of entering a proper judgment settling the right of the parties finally. As above indicated, the judgment would be in favor of the defendant either for the value of S. Goldston's interest in the mortgaged property, or for the amount of the attachment liens at the time of the trial of the action, depending upon the fact whether such interest was of less or greater value than the amount due the attaching creditors.

We think this omission in the special verdict in not finding the value of the whole of the property mortgaged is supplied by the undisputed evidence given on the trial. Several witnesses testified as to the value of the stock of goods mortgaged, and none of them placed the value at less than $13,000. The witness who placed the lowest estimate, at $13,000, said the stock was worth from $13,000 to $14,000. The other witnesses placed its value at from $15,000 to $16,000 or $17,000. The undisputed evidence in the case, therefore, fixes the value of the stock mortgaged at $13,000 or more. Under the repeated decisions of this court any fact which is established by the undisputed evidence on the trial may be considered as a part of the special verdict, for the purpose of rendering judgment on such verdict. See *Hutchinson v. C. & N. W. R. Co.* 41 Wis. 542; *Williams v. Porter*, 41 Wis. 422; *McNarra v. C. & N. W. R. Co.* 41 Wis. 69; *Eberhardt v. Sanger*, 51 Wis. 74; *Munkwitz v. Uhlig*, 64 Wis. 380, 388. Fixing the value of the goods mortgaged at $13,000, the undivided 3192–11,023 thereof would amount

to the sum of $3,764+, which is about $190 more than the whole amount of the attachment claims, including interest down to the day of trial. We think, therefore, that the defendant was entitled to a judgment, upon the evidence and findings, for the full amount of the claims of the attaching creditors at the date of the trial and verdict, together with the taxed costs in said action.

Upon the pleadings, the undisputed evidence in the case, and the special verdict, we think the defendant was entitled to the judgment above indicated, and that the court erred in overruling the defendant's motion for such judgment. In our view of the case, it becomes entirely unnecessary to discuss the correctness of the instruction of the learned circuit judge to the jury upon the trial of the action.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded to the circuit court with directions to that court to render judgment for the defendant in accordance with this opinion.

The respondents moved for a rehearing, urging that though the mortgagees were, *as among themselves*, tenants in common of the mortgaged property, yet, as against the mortgagor or creditors claiming under him, each of the respondents had a paramount interest in the entire property.

The motion was denied April 29, 1890.