Bouck vs. Enos, imp.

BOUCK vs. ENOS, imp.

*November 29 — December 16, 1884.*

APPEAL TO S. C. *(1) Exceptions must be specific.*
PROMISSORY NOTE: AGENCY: HUSBAND AND WIFE: INSTRUCTIONS TO JURY. *(2) Holding out person as agent. (3) Evidence: Court and jury. (4, 5) Instructions to jury: Circumstantial evidence.*

1. A single general exception to a large portion of the charge to the jury embracing numerous independent propositions, will be disregarded.
2. One person may so hold out another to the world as his agent as to render himself liable for the acts of the latter within the scope of the apparent agency, although no agency exists in fact.
3. To a promissory note a husband signed his wife's name, his own name as agent, and his own name. In an action thereon against both husband and wife, the evidence (tending, among other

Bouck vs. Enos, imp.

things, to show a general agency and that the husband had been accustomed, with the knowledge of the wife, to execute notes in her name and as her agent) is *held* to have justified the submission to the jury of the question of the wife's liability.

4. In such case instructions to the effect that the plaintiff could not recover (1) unless the wife authorized the husband to sign this particular note; (2) unless the money obtained on the note was used for the wife's benefit in the management of her separate estate; or (3) if the wife was an accommodation maker, although the husband had authority to sign the note as her agent,— were properly refused.

5. Where circumstantial evidence is relied upon to establish a fact, it is not error to refuse to instruct the jury as to each separate circumstance, that, standing alone, it is insufficient to establish the principal fact.

APPEAL from the Circuit Court for *Winnebago* County. The case is thus stated by Mr. Justice CASSODAY:

"The defendants are husband and wife. The action is upon a promissory note, dated August 21, 1879, payable to the plaintiff or order, at the bank, for $800, with interest at seven per cent., and to which the husband signed the name of his wife, his own name as agent, and also his own name. The complaint contained the ordinary allegations appropriate to the cause of action, including the husband's agency, and the following: "And the plaintiff alleges that the sole consideration of said note was *moneys loaned* by the plaintiff to the defendants *to carry on and operate a business* then and ever since carried on by the defendants, *and were used and enjoyed in and about the business of the defendants* carried on together." The husband made no answer. The wife's answer consisted of special denials and allegations. The only denials of the clause of the complaint quoted were these: "The defendant denies that this defendant and the defendant E. W. Enos were, on the 21st day of August, 1879, or at any other time before or since that day have been, carrying on a business *together*, or had any *joint or partnership* business." The answer further alleges, in effect,

that she was such wife; that at the time of making the note, and for many years before and since, she had had a farm of her own in Winnebago county; that the same had been during that time, and still was, her sole and separate property; that during all that time she had occupied, cultivated, and enjoyed the farm in her own name, and for her own use and benefit, and engaged in the business of farming thereon, and that her husband never had any interest or ownership in the farm or the products thereof.   Upon the trial the jury found in favor of the plaintiff, and from the judgment upon the verdict the defendant *Mary B. Enos* appealed."

For the appellant there was a brief by *Pike & Van Keuren*, and oral argument by *Mr. Pike*.

For the respondent the cause was submitted on the brief of *Gabe Bouck*, in person.

CASSODAY, J.   1. There is no exception to any specific portion of the charge.   The exception is " to so much of the following of the charge to the jury in this case."   This is followed by four printed pages, divided up into three sections, each of which contains numerous and independent propositions.   The well-established rule, that exceptions so general must be disregarded, precludes us from considering any alleged error in the charge.

2. The court was requested to instruct the jury, in effect, that the plaintiff could not recover unless they found from the evidence that the wife authorized the husband to sign this particular note for her as her agent.   To give such an instruction would have excluded from the consideration of the jury all evidence of general agency, and all evidence of expressed or implied authority to make notes generally.   Clearly, it was not good law, as applied to the facts in this case.

3. The court was requested to instruct the jury, in effect,

that the plaintiff could not recover unless they found from the evidence that the money obtained on the note was used for her benefit in the management of her separate estate. If the husband was authorized to borrow the money and give his wife's note for it as her agent, then it was binding upon the wife, even if the money was subsequently diverted to other uses; but such an instruction would have made the plaintiff responsible for the particular application of the money after it was borrowed, and barred recovery even if the wife used it for some other purpose.

4. The court was requested to charge the jury, in effect, that the plaintiff could not recover if the jury found from the evidence that the wife was an accommodation maker, even though they found that the husband had authority to sign the note as her agent. Such an instruction would have been wholly inapplicable to the facts and evidence in the case, and hence misleading.

5. The court was requested to instruct the jury to the effect that the fact that the husband was the agent of his wife to carry on the farm was not sufficient of itself to establish such an agency as would authorize him to sign her name to a promissory note. The court charged, in effect, that there was no direct proof of the husband's agency or authority to sign his wife's name to the note. In fact, the charge went still further, and indicated pretty clearly that there was a failure of proof as to such agency in fact; and then, upon all the facts and circumstances in the case, submitted to the jury the question whether there was, on the part of the wife, such a holding out of agency during the time in question as would justify people dealing with the husband in believing that she had given him authority to sign the note as her agent. That such holding out might, in a given case, be proved by circumstantial evidence, no one would doubt. Circumstantial evidence is defined to be, where the proof applies immediately to collateral facts sup-

posed to have a connection, near or remote, with the fact in controversy. *Eberhardt v. Sanger*, 51 Wis. 78. It would be obviously misleading to separate each collateral fact going to make up the chain of circumstances which would, together, thus force conviction of the principal fact in controversy, and then with qualification instruct the jury that such isolated collateral fact was not sufficient of itself to establish such "principal fact." *Ibid.* This is precisely what was sought to be done by the instruction requested. For the reasons given it was properly rejected.

That a principal may be bound by such holding out, though no agency in fact exists, seems to be settled. *Kasson v. Noltner*, 43 Wis. 650; *Bentley v. Doggett*, 51 Wis. 231; *S. C.* 37 Am. Rep. 827; *Gano v. C. & N. W. R'y Co.* 49 Wis. 57; *S. C.* 60 Wis. 12; *Savage v. Davis*, 18 Wis. 608; *Debenham v. Mellon*, 34 Eng. (Moak), 245. It is upon the same theory that a person, though not a partner in fact, may be bound as such by his conduct, declarations, admissions, and acquiescence. *Benjamin v. Covert*, 47 Wis. 375; *S. C.* 55 Wis. 157; *Gilchrist v. Brande*, 58 Wis. 201.

6. The court refused to set aside the verdict as against and contrary to the evidence given on the trial. Was that error? We confess this is the most difficult question presented on this appeal. It stands confessed that the husband put all the signatures to the note, as indicated. It is undisputed that the husband had carried on his wife's farm, bought and sold property for her, hired the help, transacted her business in relation to the farm and the management of it, and run the farm from 1874 to the time of the trial; and that during that time the wife had never personally signed any note. The husband testified, among other things, in effect, that he signed his wife's name, as agent, in one single instance, and that was on a contract at Omro; that soon after they moved upon the farm in April, 1874, he bought a reaper, and the man of whom he bought it wanted he

should sign the papers; that he told him he did not own the property, and then, as agent, signed his wife's name, but that he had no recollection of signing any other notes; that the consideration of the note in suit was the taking up of divers other notes given to the plaintiff for borrowed money; but that he did not remember whether any of the other notes had been signed by him as agent of his wife or not. The wife, among other things, testified to the effect that she had borrowed money from time to time of her father for the purposes of carrying on the farm; that she thought she knew where most everything was bought, and where the money came from that paid for it; that there were sheep on the farm; that her husband bought them — he bought whatever was put on the farm; that he bought part of them, not all of them; that he had the general management of the farm in buying and selling; that she did not know who the sheep belonged to; that she did not purchase them; that there was something that was not her property; that she knew nothing about them.   There was evidence on the part of the plaintiff tending to show that he had, at the request of the husband, indorsed at the bank six different notes, aggregating $800, besides the one in suit, each signed by the husband, as agent of the wife, during the years 1875–78, inclusive, and that several of these notes were paid by the plaintiff; that the plaintiff was induced by the husband to believe that several of them were for money to buy property to put upon the farm, and that these notes formed the consideration of the note in suit.   Such being the nature of the evidence, it is apparent that the question whether there was sufficient evidence to take the case to the jury is exceedingly close.

.After a very careful consideration we are inclined to think the trial court was justified in submitting the case to the jury upon all the facts and circumstances disclosed by the evidence, especially in view of the fact that there was no specific

or adequate denial of the allegation in the complaint that the moneys loaned by the plaintiff to the defendants as the consideration of the note in suit "were used and enjoyed in and about the business of the defendants carried on together." It must be remembered that it is the province of the jury to determine, not only the credibility of witnesses and all disputed facts, but all conflicting inferences reasonably drawn from undisputed or admitted facts. Cases above cited, and *Kaples v. Orth, ante*, p. 531; *Townley v. C., M. & St. P. R'y Co.* 53 Wis. 633. Besides, as the question is here presented, we must disregard all evidence except such as tends to support the verdict, and then give to that evidence the most favorable construction it will legitimately bear, including all reasonable inferences to be drawn from it. *Spensley v. Lancashire Ins. Co.* 54 Wis. 433; *Sabotta v. St. P. F. & M. Ins. Co.* 54 Wis. 687.

The theory upon which a husband is held liable for necessaries sold to the wife is an agency implied from all the facts and circumstances of a given case. Here it was in evidence that the defendants had for many years lived together as husband and wife. That tender relation of itself called for mutual confidence and affection. To this relation there was added the confessed general agency and authority disclosed in the evidence. The business conducted required a wide range of general authority on the part of the husband, or very frequent business communication between him and his wife. Persons dealing with the husband in matters pertaining to the business had the right to infer that the wife was cognizant of whatever the husband had been accustomed for years to do in the business. Here there is evidence tending to show that, for years prior to the making of the note in suit, the husband had, to the knowledge of the plaintiff, been accustomed to execute promissory notes in the name of and as the agent of his wife. Were not the jury authorized to find from all the facts and circumstances of the case, upon

the principles indicated, that the plaintiff was justified in inferring that the money was obtained for the use, benefit, and enjoyment of the business and the family upon the credit of the wife's separate estate, and that the wife had knowledge of such custom of the husband in signing her name to promissory notes, or had given her tacit assent or express authority in the making of such notes? We must hold that they were. Certainly a married woman, having a farm of her own, may carry on the same, and for that purpose may buy property or borrow money on credit, and give her promissory note therefor, and for the payment of which she becomes liable in an action at law in all respects as if she were unmarried. *Krouskop v. Shontz,* 51 Wis. 204; *Cramer v. Hanaford,* 53 Wis. 85. What she may thus do by herself, she may do through the agency of her husband. Upon all the facts and circumstances of the case, we do not feel authorized to disturb the verdict.

*By the Court.*— The judgment of the circuit court is affirmed.