## CALKINS V. SEABURY-CALKINS CONSOL. MIN. CO.

1. An allegation of the complaint, not denied by the answer, stands admitted, and need not be proved.

2. An allegation in the complaint that defendant agreed to pay plaintiff, as its superintendent, five dollars per day, is not denied by an allegation contained in a counterclaim in the answer that "on or about the 1st day of September, 1885, the said plaintiff was appointed superintendent of the defendant corporation, without any fixed rate of compensation."

3. Payments fully made for Sunday labor cannot be recovered on the ground of the invalidity of a contract for Sunday labor.

4. The courts will neither assist in enforcing such a contract nor in recovering what has been paid under it. The parties, being in *pari delicto*, will be left where they have put themselves.

5. Plaintiff was appoinned the superintendent of the defendant corporation under a by-law defining his duties to be "to reside at the mine and to take charge of the company's property; to control and direct all labor; to make monthly returns to the board of trustees of all expenditures; to make requisition upon the board of trusteesfor funds necessary to prosecute work at the mines and company's works." *Held*, that, in the absence of evidence showing other terms of employment than those contained in the by-law, such superintendent's right to recover for services was not limited to days when he was actually employed with the men working at the mines, as the by-law plainly contemplated other duties, which might properly and perhaps necessarily be performed at other times.

6. After the testimony in a case has closed, it is discretionary with the court whether to open the case or not, to receive additional evidence; and the decision will not be reviewed here, unless this court is satisfied that such discretion was abused.

7. An exception "to that portion of the court's charge commencing with the words [specifying the words], and from there to the end," is not an available exception, where the portion of the charge so defined contains two or more distinct and independent propositions.

(Syllabus by the court.  Opinion filed April 26, 1894.)

Appeal from circuit court, Lawrence county.  Hon. CHAS. M. THOMAS, Judge.

Action to recover for services alleged to have been per-

formed by plaintiff for the defendant company. Plaintiff had judgment, defendant appeals. Affirmed.

The facts are stated in the opinion.

*Frank McLaughlin (Edwin VanCise, of Counsel)* for appellant.

*McLaughlin & McLaughlin*, for respondent.

KELLAM, J. This action was by respondent, as plaintiff, to recover for services alleged to have been performed by him for the defendant company, as its superintendent, during the years 1890 and 1891, the number of days in each month being particularly stated, at five dollars per day, which, it was alleged, was a reasonable compensation, and which amount the defendant promised to pay. The answer denied "that the plaintiff was the superintendent of this defendant, or did or performed any work or labor for this defendant, since the 19th day of September, 1891. It admits that prior to the 19th day of September, 1891, the plaintiff did and performed some work and labor for defendant, the amount of which said work and labor so performed by the plaintiff for the defendant prior to September 19, 1891, was of the reasonable value of five dollars per day, but alleges the fact to be that said work and labor and services were not worth more than $2.50 per day." The answer further alleged, as a counterclaim, that between the 1st day of September, 1885, and the 1st day of January, 1890, plaintiff had, as superintendent, wrongfully issued orders upon the treasurer of the defendant company, and procured their payment, in excess of the reasonable value of his services by $1.50 per day, such excess amounting in the aggregate to over $1,900; and, as a second counterclaim, that plaintiff had during such time wrongfully issued orders as aforesaid to himself, and procured their payment, for services claimed to have been rendered, at the rate of $5 per day, for 290 days, when in fact he rendered no services during such days. This claim amounts in the aggregate to $1,450. The counterclaims were denied in a

reply by plaintiff.    Upon a trial the plaintiff had a verdict and judgment, and the defendant appeals.

It is first alleged that the court erred in allowing plaintiff to testify as to the terms of an alleged contract of employment, without first showing that in making such contract the by-laws of the company in that respect had been complied with.    Upon the introduction of oral evidence to prove such contract, defendant objected, "for the reason that the by-laws of the company required that contracts shall be in writing, and entered upon the minutes of the company, and there is no evidence that the contract was so made."    The objection was overruled. The by-law referred to was as follows:    "No contract by any officer of the company shall be valid without the previous or subsequent ratification of the board of trustees."    There is nothing in the by-law requiring the contract to be in writing. At the second meeting of the defendant's board of trustees held September 1, 1885, as appears from the minutes of the meeting, in evidence, the following action was taken:    "Motion made and seconded that we appoint George S. Calkins superintendent of the Seabury-Calkins Con. Mining Co.    Carried." This, within the by-law referred to, sufficiently shows the employment of plaintiff by defendant as its superintendent.    Defendant was not in position to require proof of the compensation agreed upon.    The complaint alleges that defendant agreed to pay plaintiff $5 per day.    It also alleges that plaintiff's services were of the reasonable value of $5.    The answer does not deny the agreement alleged, but only that the services rendered were of the reasonable value of $5, and alleged that they were not worth more than $2.50 per day.    An allegation in a complaint that a party "agreed" to do a certain thing must be taken to mean that he agreed in a valid and legal manner.    Jenkinson v. City of Vermillion (S. D ) 52 N. W. 1066; Stillwell v. Hamm, 97 Mo. 579, 11 S. W. 252; Marston v. Swett, 66 N. Y. 206; Swetland v. Barrett, 4 Mont. 217, 1 Pac. 745.    It being alleged in the complaint that the company agreed to pay

plaintiff $5 per day, and it not being denied in the answer, the allegation stands admitted, and it was not incumbent on plaintiff to prove it. On the oral argument it was argued that an allegation in the defendant's first counterclaim sufficiently neg ative this averment of the complaint to put it in issue. The allegation is "that on or about the first day of September, 1885, the said defendant [plaintiff evidently intended] was appointed superintendent of the defendant corporation, without any fixed rate of compensation." This does not meet the al egation of the complaint, for it only alleges that no rate of compensation was fixed when the appointment was made. It would be perfectly consistent with the complaint and the answer that the defendant afterwards fixed and agreed to pay the compensation alleged We think the pleadings, fairly construed, allege, on the one hand, and, by failure to deny, admit, on the other, that defendant agreed to pay plaintiff $5 per day for his services. But treating the question as one to be determined, not by the pleadings, but by the evidence, there was certainly sufficient evidence tending to show an agreement as alleged to make a case for the jury. The plaintiff testifies: "I stated at the meeting that I would work for $5 a day. It was discussed at the meeting. They appointed me superintendent, and I stated that I would work for $5 a day. It seemed agreeable to them and I entered their employment the next day. It was understood that way. I told them I would work for $5 a day, and they did not object to that." Against this was the testimony of Director Hopkins, who was asked: "What arrangements, if any, or what talk, if any, was had regarding the question of salary or wages?" He answered: "There was nothing said about it at all." On his cross-examination he said: "It might have happened that Mr. Calkins said this, and I not have heard him." Another director, Stewart, testified in answer to a question as to what, if anything, was said as to Calkins' salary or wages: "I have forgotten. I was only in the company about a month or such a matter, and I have forgotten whether

there was anything or not.    If there was anything I have forgotten about it.    I paid but little attention to it." Another director, Romans, said:    "I don't know of any contract by the board of directors fixing the salary of Mr. Calkins as superintendent." But he also says he was a director but a few months, and attended but one meeting, and that was a stockholders' meeting at the organization of the company, in August, 1885; so that he could have had no personal knowledge of what occurred at any director's meeting.    Upon this evidence, the question of whether there was an understanding or agreement that Calkins should receive five dollars per day for his services as superintendent is an open one, to be determined as a question of fact upon conflicting testimony.    But from September, 1885, to September, 1891 a period of six years, he was regularly paid at that rate. It is almost inconceivable that these payments should have been made for such a length of time and the directors have no knowledge of it.    If they did know of it, and took no measures to stop it, the fact would be strongly corroborative of the agreement that he should receive it.    Upon this theory there was no error in allowing Director Sewall to testify that his understanding was, all the time he was a director, that Calkins was getting five dollars a day.    Upon the same ground, and for the same reason, the superintendent's report made to the board was admissible.    The report showed, among other things, regular and continued payments to the superintendent at five dollars per day.    No objection was then made to these items, but the minutes expressly show that the report was "read and approved."    It is true there was a conflict of evidence as to whether the paper offered in evidence was the same paper presented to and read at the meeting referred to. Plaintiff, Calkins, swears positively that it was, and was then in the same condition as at the trial.    In this he is corroborated by S. H. Calkins, the secretary of the board.    Although this is denied by other witnesses, we cannot pass upon it as a question of fact,    So far as the jury has considered the facts,

we must, upon such evidence, accept their conclusion as correct. Tested by the pleadings, we think there was no issue upon the alleged agreement of the board to pay the superintendent five dollars per day, the allegation of the complaint in that respect not being denied; but, considered as an issue of fact, we think the evidence supports the verdict of the jury. Neither was there any issue between the parties as to the number of days plaintiff worked during the years 1890 and 1891, being the time for which he claimed to recover. The complaint alleged definitely the number of days which he claimed to have worked in each month, and such allegation is not denied in defendant's answer.

Passing now to defendant's second counterclaim, we notice that by this counterclaim it was sought to recover back money paid to plaintiff, at five dollars per day, for Sundays and other days, when it was claimed he did not work. Payments fully made for Sunday labor cannot be recovered on the ground of the invalidity of a contract for Sunday labor. The courts will neither assist in enforcing such a contract, nor in recovering what has been paid under it, but will leave the parties where they have put themselves, they being in *pari delicto*. Broom, Leg. Max. 721; Moore v. Kendall, 2 Pin. 99; Foster v. Wooten (Miss.) 7 South. 501; Bish. Cont. § 627, and cases there cited. But, aside from Sunday labor, appellant and defendant insists that plaintiff has received pay for many days when the evidence shows he did not work. Assuming as correct the defendant's theory, that, as superintendent, the plaintiff was only entitled to pay for days when the mines were being actually worked, and he was actively superintending the labors of the men thus employed, we do not think appellant's theory of compensation upon the evidence is correct. If we understand his theory, it is that the greatest number of days in which any one man worked would necessarily be the greatest number of days for which the superintendent could rightfully charge; but obviously this would not be a safe basis for calculation, for while A. may

have worked only 25 days and B. 20 days, and C. 15 days, yet there might have been work going on every day in the month, B. working some days when A. or C. did not, and C. working when neither A. nor B. was at work. Taking the evidence as it is, we do not think the inference a necessary one that plaintiff charged or received pay for days when no one else was at work. But, if it did, we should be reluctant to hold that under an employment as superintendent, his powers and duties not being further shown than by the by-laws hereafter referred to, he could not be entitled to pay except for the days when the men constituting the force under him were actually at work. One of the by-laws of the defendant corporation, as appears from the abstract, was as follows: "A general superintendent may be appointed by the board of trustees, whose duty it shall be to reside at the mine, and to take charge of the company's property; to control and direct all labor; to make monthly returns to the board of trustees of all expenditures; to make requisition upon the board of trustees for funds necessary to prosecute work at the mines and company's works." The discharge of these duties might and probably would require the time and service of the superintendent at times when the mines might be temporarily idle. To support this counterclaim, the burden of proof was upon the defendant. The object was to recover money which had been actually paid to plaintiff. The mere fact that he had received pay, as superintendent, for days when the men under him were not actually at work, did not, under the evidence as to his duties as such superintendent, show that he had been wrongfully paid, and so establish a claim to have the amount so received paid back to the defendant company. On the 14th of December, 1891, as shown by the recorded minutes of the board's proceedings, a meeting was held at which all directors were present. The plaintff's bills, then before the board, appeared to have been considered and acted upon. One of the bills, for $1,620, which, while it is not

set out in the abstract, is treated by both sides as covering the claim here sued upon, was cut down by the board on other accounts, and then allowed; but, so far as appears by the minutes, no objection was made to the number of days charged for. Such action would ordinarily tend to show that the board did not regard the bill as materially wrong in that respect; but here the appellant alleges error, because the court refused to allow it to show that the bill was in fact allowed as a compromise, and not because it was considered by the board as a just and valid claim. The offer to make this proof, it appears, was made after the testimony had been closed, and whether to reopen the case for the reception of such evidence was a question to be determined in the discretion of the trial court. Caldwell v. Steamboat Co., 47 N. Y. 282; Fell v. Locomotive Works (Sup.) 3 N. Y. Supp. 381; McNutt v. McNutt, 116 Ind. 565; 19 N. E. 115; Bank v. Wolff, 79 Cal. 73, 21 Pac. 551, 748; Des Moines Sav. Bank v. Colfax Hotel Co. (Iowa) 55 N. W. 67. Ordinarily, a trial court ought to receive all competent evidence upon which an intelligent adjustment of the rights of the parties depends; and if we could see how this evidence, if received, would probably, or could reasonably have changed the judgment of the jury as to the allowance of this counterclaim, or any part of it, we should be inclined to think the tral court did not wisely exercise its discretion in refusing the offer; but holding, as we feel obliged to, that, with this fact proved, the evidence on the part of the defendant would be entirely inadequate to establish such counterclaim, no injury inured to the defendant from the refusal.

The only other assignment which requires specific notice relates to the exception by defendant to a portion of the judge's charge to the jury. At the close of the charge the defendant's attorney said: "I desire to except to that portion of the court's charge commencing with the words 'There was some minutes introduced here,' and from there to the end." That portion of the charge included between the limits designated "from there

to the end" covered, as shown in the abstract, at least two distinct propositions. There is nothing in such an exception to direct the attention of the court to the point of alleged error, or even to the general proposition in which the claimed error lies. Such an exception is insufficient to sustain an assignment of error. Banbury v. Sherin (S. D.) 55 N. W. 723; Bouck v. Enos, 61 Wis. 660, 21 N. W. 825.

While we have not followed appellant's assignments of error *seriatim*, we have endeavored to consider and discuss the grounds upon which each and all rest. We discover no error which we think would justify us in reversing the judgment. The judgment is affirmed.