VIVIAN FINLAYSON, Respondent, v. MRS. H. M. BRYAN, Martin Hanson, and Roy Hanson, Doing Business as Yellow Cab Company, Hartford Accident and Indemnity Company, a Corporation, Maryland Casualty Company, a Corporation, Standard Accident and Insurance Company, a Corporation, and United States Casualty Company, a Corporation, Appellants.

(— A.L.R. —, 217 N. W. 662.)

**Carriers.— automobile transportation company is common carrier.**

1. An automobile transportation or taxi company, which holds itself out as ready to receive and transport all who apply for passage, and are ready to pay for the service, is a common carrier.

**Carriers — degree of care common carrier must exercise.**

2. A common carrier of passengers for hire is required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight for the safety of its passengers, in view of the mode and character of the conveyance adopted, and consistent with the practical operation of its business.

**Carriers — negligence of defendant not sustained by evidence.**

3. Evidence of having a lap robe on the floor of a taxi, and that, on alighting, a passenger tripped or stumbled over it, fell and sustained injury, is insufficient to justify a finding of negligence of the defendant.

Opinion filed February 2, 1928.

Carriers, 10 C. J. § 1034 p. 607 n. 75; § 1296 p. 856 n. 91; § 1349 p. 925 n. 22; § 1353 p. 932 n. 76; § 1452 p. 1063 n. 61.

Appeal from the District Court of Burleigh County, *Jansonius,* J. Action to recover damages for personal injury. Defendants appealed.

Reversed.

*Conmy, Young & Burnett,* for appellants.

*Zuger & Tillotson,* for respondent.

ENGLERT, Dist. J. The plaintiff sued to recover damages for per-

Note.—(1) Taxicab company as common carrier, see annotation in 4 A.L.R. 1501; 31 A.L.R. 1206; 45 A.L.R. 300; 5 R. C. L. Supp. 245.

sonal injuries. There was a verdict for $19,583.33. The defendants appealed from the judgment entered thereon. There are two appeals, one by the Yellow Cab Company, and the other by the four insurance companies. The insurance companies were made parties defendants, under their policies of insurance, insuring the Yellow Cab Company against damages arising from its negligence. Both appeals were argued and submitted together.

The complaint charges that the Yellow Cab Company was "guilty of negligence in failing to furnish an automobile adapted to the safe carriage of passengers and in failing to exercise reasonable and proper care in operating said automobile, and in failing to furnish a competent driver to operate the same, and as a result of such failure to exercise due care, and through negligence on the part of said defendants and on the part of the driver of said automobile, plaintiff, while alighting from said automobile, became entangled in a blanket or robe and a foot rest negligently deposited and left by said defendants in said automobile, and that as a result of said negligence, plaintiff stumbled and fell from said automobile and thereby, without fault or negligence on her part, sustained severe and permanent injuries. . . ."

All of the defendants "admit that the Yellow Cab Company was engaged in the business of transporting passengers for hire in automobiles, both as an auto transportation company, and as a taxicab company." The defendants deny all charges of negligence, and plead contributory negligence of the plaintiff.

Many errors are assigned and argued on these appeals. The first error argued in the briefs presents the question of whether or not the defendant, Yellow Cab Company, was negligent.

While there is some dispute between the parties as to the degree of care the Yellow Cab Company was in duty bound to exercise in transporting its passengers, there is no dispute on the claim of the plaintiff that the company was a common carrier of passengers for hire, and was so engaged at the time of the injury.

It is now firmly established that an auto transportation company, or taxicab company, which holds itself out as ready to receive and transport all who apply for passage, and are ready to pay for the service, is a common carrier. This principle is now so generally applied, that

it ought not to require the citation of any authority, but if authorities are desired, the cases hereinafter cited, in connection with the degree of care to be exercised by the common carrier of passengers for hire, fully prove the rule.

At the time of the accident, the plaintiff, a young woman, twenty-one years of age, resided in the city of Bismarck, with her parents. About three o'clock in the afternoon of April 4, 1926, the plaintiff returned to Bismarck on Northern Pacific train number seven, and engaged a taxi of the Yellow Cab Company, driven by Roy Hanson, to take her home. She carried a travelling bag. The taxi was a four-door, two-seated Oldsmobile auto. From the front seat, the driver opened one of the doors to the rear seat, and plaintiff entered. She placed her handbag on the seat beside her, and was then driven to her home. On arriving at her home, she gave the driver a one-dollar bill, and he returned to her seventy-five cents. The engine remained running. The driver opened the rear door from the driver's seat, to let her out. He did not leave his seat to help her out of the car. She testified:

"I started to get out, and tripped on a robe and fell out head first.

"Q. You say you stumbled and fell?

"A. Yes. . . .

"Q. Now describe the automobile a little fuller, as to inside; what was there on the floor?

"A. A robe.

"Q. By robe, you mean a blanket, or something of that kind?

"A. Yes.

"Q. Was it light or dark colored?

"A. Dark.

"Q. Was it folded up?

"A. No.

"Q. Was there anything else there on the floor?

"A. I didn't notice anything.

"Q. Any foot rest?

"A. Yes, there was.

"Q. And that was fastened to the floor of the car?

"A. Yes.

"Q. Did you say the robe was folded up?

"A. No.

"Q. Lying loose there on the floor?

"A. Yes.

"Q. And when you stepped out, you say you stubbed your foot, or stumbled on this robe?

"A. Yes, I tripped on the robe.

"Q. You tripped on the robe, and fell out?

"A. Yes, sir.

"Q. And you say you fell head first?

"A. Yes."

She also testified that she saw the robe in the taxi at the time she entered the same. This is the evidence on which the plaintiff relies and predicates her right to recover, because of the negligence of the defendant, Yellow Cab Company.

Being a common carrier of passengers for hire, there is some dispute between the plaintiff and the defendants on the degree of care the defendant, Yellow Cab Company, must exercise for the safe transportation of its passengers. Whatever controversy may have existed among the earlier decisions of the courts relative to the duty and liability of auto transportation companies, taxicabs, and motor busses, holding themselves out to the public as ready to receive and transport passengers for hire, it is now well established that the rule applicable to common carriers of passengers for hire generally prevails and applies. Riggsby v. Tritton, 143 Va. 903, 45 A.L.R. 280, 129 S. E. 493; Korner v. Cosgrove, 108 Ohio St. 484, 31 A.L.R. 1193, 141 N. E. 267; Anderson v. Yellow Cab Co. 179 Wis. 300, 31 A.L.R. 1197, 191 N. W. 748, 22 N. C. C. A. 285; Hinds v Steere, 209 Mass. 442, 35 L.R.A.(N.S.) 658, 95 N. E. 844, 1 N. C. C. A. 134.

In pronouncing the degree of care that a common carrier of passengers for hire must exercise for the safe transportation of its passengers, the courts have used various words and phrases, in giving expression to their views and in declaring the rule. Some say it requires "the utmost human care." 1 Hutchinson, Carr. 3d ed. § 100, and cases cited. Other courts say it requires "a high degree of care." Kloran v. Drogin, 99 N. J. L. 422, 31 A.L.R. 1191, 123 Atl. 760. Others speak of it as requiring "a very high degree of care." Riggsby v. Tritton, 143 Va. 903, 45 A.L.R. 280, 129 S. E. 493. And still others, and these are in the majority, say that it requires "the highest

degree of care." Anderson v. Yellow Cab Co. 179 Wis. 300, 31 A.L.R. 1197, 191 N. W. 748, 22 N. C. C. A. 285; Fleming v. Red Top Cab Co. 133 Wash. 338, 233 Pac. 639; McKellar v. Yellow Cab Co. 148 Minn. 247, 181 N. W. 348; Dowd v. Atlas Taxicab & Auto Service Co. 187 Cal. 523, 202 Pac. 870; Ormond v. Wisconsin Power & Light Co. (Wis.) 216 N. W. 489.

There is very little, if any, difference in the ultimate conclusions reached by the courts on the degree of care to be exercised by a common carrier of passengers. They all exact a very high degree of care. The difference lies in the language used by the courts in reaching their conclusion. As said in 4 R. C. L. 1147: "The difference in the statements is merely a choice of words, and does not denote conflicting views." In Ormond v. Wisconsin Power & Light Co. supra, the court said:

"The duty which a common carrier owes to a passenger is subject to various statements in the books imposing different degrees of care upon the common carrier, all of which require, however, a very high degree of care."

The supreme court of Oregon, in the recent case of Coblentz v. Jaloff, 115 Or. 656, 239 Pac. 825, had occasion to discuss the varying language used by the courts in declaring the degree of care a common carrier must exercise for the safety of its passengers, and came to the conclusion that they all obligated the carrier to exercise "the highest degree of care."

In Hinds v. Steere, supra, the court said that a common carrier "was bound to use reasonable care," and in defining reasonable care, said "this reasonable care should be defined as the highest degree of care consistent with the proper transaction of the business."

In Gardner v. Boston Elev. R. Co. 204 Mass. 213, 90 N. E. 534, the court said that a common carrier "is justly held to a very high degree of care for their (passengers') safety," and then concluded, in the same sentence, "that he is held to the exercise of the highest degree of care."

In the recent case of Ormond v. Wisconsin Power & Light Co. supra, speaking of the duty of common carriers, the court said: "It is liable to them only for ordinary negligence, which means simply a want of ordinary care, as that term is measured with reference to the duty of

common carriers." Then, in measuring the duty and degree of care, the court said: "To be true, the care exacted of the common carrier is a high degree of care. To constitute ordinary care, it must be the 'highest degree of care reasonably to be expected from human vigilance and foresight.' "

It is, therefore, apparent, that while courts use different language, and varying words and phrases, in reaching their conclusion, the conclusion uniformly exacts a very high degree, or the highest degree, of care. From a consideration of the phrases "a very high degree of care," or "the highest degree of care," we are unable to discern any appreciable distinction.

The most generally accepted and the best statement of the rule is found in Ferguson v. Truax, 136 Wis. 637, 118 N. W. 251, where the court said:

"For the safety of their passengers, common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted, and consistent with the practical prosecution of their business."

In testing and applying this rule, the Wisconsin supreme court, in the recent case of Ormond v. Wisconsin Power & Light Co. said:

"Whether the conduct of the common carrier in a given particular accords with its legal duty in the premises is to be tested by comparing its conduct with that generally exercised by those engaged in the same business, under the same or similar circumstances."

Turning to the facts in this case, there is no proof, as charged in the complaint, that the taxi was in any manner unsafe, or that it was not operated with care and safety. The auto was a six cylinder, Oldsmobile sedan, 1926 model, and no defect appears beyond the statement in the complaint. The allegation that the driver of the taxi was incompetent is not borne out by the evidence. Failure to help plaintiff out of the taxi is no evidence of incompetency. Ordinarily, a common carrier is not charged with the duty of helping passengers out of cars. 6 Cyc. 611 says:

"Nor in general is there any duty to assist a passenger in entering or alighting from the train or other conveyance, unless there is some unusual danger or difficulty arising from the place or means afforded

for alighting, or the passenger is, to the knowledge of the servants of the carrier, infirm or under some disability."

It is argued that the plaintiff had an operation on one of her legs some time prior to the accident, and that she walked with a slight limp. There is nothing in the record showing that the driver had knowledge of it. But if he had, a slight limp would not indicate that the plaintiff was "infirm or under some disability." There is no claim that she needed help or assistance. On entering the taxi, the driver opened the back door from the front seat, and she entered without help, and did not demand assistance, or indicate that she needed any. Her evidence is that she had "full use of it from that time (meaning from time of operation) until the day this accident occurred."

It is also insisted that it was the duty of the driver to warn the plaintiff, and that he did not do so. No matter how careful a driver might be, he would have no reason to believe that a passenger would stumble over a robe in the car. To require such warning would border close on the ridiculous. No such duty, however, is imposed. 6 Cyc. 611 says: "But in general there is no duty to instruct or warn passengers, it being the duty of the passenger to comply with the usual, reasonable and known regulations of the carrier with reference to safe entrance and exit."

The fact that the engine was permitted to idle while change was made for the fare is no evidence of negligence. There is no claim that the car moved in any manner whatever.

The allegation in the complaint that the foot rest was negligently deposited and left in the automobile is not supported by any evidence. She testified:

"Q. Was there anything else there on the floor (meaning besides the robe)?

"A. I didn't notice anything.

"Q. Any foot rest?

"A. Yes, there was.

"Q. And that was fastened to the floor of the car?

"A. Yes."

The foot rest was one of the regular equipments of the car, and fastened as all foot rests are fastened to automobiles. There is no evi-

dence whatever that it was either defective or out of place. On the contrary, the evidence shows that the plaintiff tripped or stumbled over the robe and not the foot rest.

"Q. And when you stepped out, you say you stubbed your foot or stumbled on this robe?

"A. Yes, I tripped on the robe."

This, then, presents, as the evidence clearly shows, the only question of whether it was negligence on the part of the Yellow Cab Company to have a robe in the auto, or taxi. The mere fact that the accident happened, resulting in severe injury to the plaintiff, is in itself no evidence of negligence. Negligence must be proven. There is no presumption of negligence in this case. The rule of res ipsa loquitur does not apply. Riggsby v. Tritton, 143 Va. 903, 45 A.L.R. 280, 129 S. E. 493.

The accident occurred on April 4th. At that season of the year, a robe fills a much required need in an auto, or taxi. The presence, object and purpose of a robe in an auto or taxi is known to all. It is there for the convenience and comfort of the passenger. Robes have been in common use on horse-drawn vehicles for so long a time that the memory of man runneth not to the contrary, and on motor-driven vehicles since the advent thereof. No amount of caution, care and foresight would enable an auto or taxi owner or driver to anticipate that a passenger exercising proper care would trip over a lap robe and receive injury. Some complaint is made because the robe was lying on the floor of the taxi. It is suggested that the robe should have been folded and placed on the robe rod. If such had been done, the result here complained of could just as likely happen. If a passenger remove it from its hanger for covering purposes, and on alighting push it off, he might stumble or trip over it. It may be said that the passenger would then know that it was there, and be on the lookout. This is no sufficient answer. The plaintiff saw the robe in question, as she entered the taxi, and knowing it to be there, the accident happened. If the robe were neatly folded and hung over the rod, there would be nothing to prevent a passenger from removing it, and using it for the purpose intended. If liable at all, the defendant, Yellow Cab Company, would be liable in either event, should such event happen, and care in placing the robe would be no safeguard or security whatever. If such rule were adopted, then

the presence of a robe in an auto or taxi would be a great hazard. There was nothing out of the ordinary about this robe. If there had been a hole or a slit in it, then a claim of negligence within the rule announced might well be presented. A holding that, to permit a common, ordinary lap robe to lie on the floor of a car or taxi is negligence, would be tantamount to a holding that the defendant, Yellow Cab Company, was an insurer of the safe transportation of the plaintiff. Carriers of passengers for hire are not insurers of the safety of passengers. Ormond v. Wisconsin Power & Light Co. (Wis.) 216 N. W. 489; 6 Cyc. 591.

The case of Soper v. Erickson, 172 Minn. 377, 215 N. W. 865, cited by the plaintiff, is readily and clearly distinguishable from the facts in the present case. In that case, the plaintiff claimed that "her right foot was caught in a hole just outside her apartment, and that she fell down the stairway, sustaining the injury for which she sues. Her claim for recovery is that this hole was negligently allowed to be in the carpet." It would hardly have been claimed that tripping on the carpet, without more, would have been sufficient basis for an action for damages. There is nothing out of the ordinary shown in the case at bar.

Upon the evidence in this case, we are of the opinion that the plaintiff has not shown that the defendant, Yellow Cab Company, was negligent. This conclusion disposes of this case, and of the appeals, and, therefore, the other errors assigned need not be considered.

The judgment is reversed, and the action dismissed, with costs to the defendants.

NUESSLE, Ch. J., and BURKE, BURR, and BIRDZELL, JJ., concur.

CHRISTIANSON, J., did not participate; Honorable M. J. ENGLERT, Judge of the First Judicial District, sitting in his stead.