Elizabeth KUNTZ, Plaintiff and Respondent,

v.

Matt STELMACHUK, Joseph Skalsky, d/b/a Queen City Cab Co., and John Perzinski, Defendants and Appellants.

No. 8228.

Supreme Court of North Dakota.

Aug. 31, 1965.

Howard A. Freed, Dickinson, for plaintiff and respondent.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for defendant and appellant Matt Stelmachuk.

Greenwood & Swanson, Dickinson, at trial, and Floyd B. Sperry, Bismarck, on appeal, for defendant and appellant Joseph Skalsky.

George T. Dynes, Dickinson, at trial, and William R. Mills, Bismarck, on appeal, for defendant and appellant John Perzinski.

STRUTZ, Judge.

This is an action for personal injuries suffered in a motor vehicle accident. The plaintiff was a passenger in a taxi owned by the defendant Skalsky while it was being driven in a southerly direction in the city of Dickinson by the defendant Perzinski, his employee. While the plaintiff was such passenger, the taxi collided with an automobile driven in a westerly direction by the defendant Stelmachuk. As a result of the collision, the plaintiff suffered severe personal injuries.

Traffic at the intersection in question was controlled by automatic traffic signals, and there is a conflict of evidence as to which of the vehicles had the green light. The driver of the taxi, the defendant Perzinski, contends that he had the green light for the last 140 feet going into the intersection. His testimony is corroborated to some extent by the plaintiff, who testified that the taxi in which she was riding as a passenger had the green light as it entered the intersection. The defendant Stelmachuk, on the other hand, contends that he had the right of way and that as he approached the intersection and entered it the green light was in his favor. He further contends that, if it did change, it changed after he had entered such intersection.

The record discloses that the intersection in which the collision occurred was an open intersection and that both drivers had a clear view of the area from which the other was approaching for a distance of at least 150 feet, and that each of the drivers could have seen the other for that length of space before reaching the intersection. Both drivers claim to have been traveling

at approximately twenty miles an hour, or approximately twenty-nine feet a second; and each of the drivers admits that he did not see the other until he was within twenty feet of such other vehicle. The defendant Stelmachuk, on discovering the defendant Perzinski's taxi in the intersection, stepped on the accelerator in an attempt to avoid the collision. Perzinski, however, on discovering the defendant Stelmachuk about twenty feet from his vehicle, stepped on his brakes. Then the collision occurred.

The plaintiff commenced an action against the defendant Skalsky as owner of the taxi line and against the operators of both vehicles involved. Each of the defendants filed a separate answer. The defendant Stelmachuk filed a cross-complaint against the defendants Skalsky and Perzinski for the damages to his automobile as a result of the collision, while the defendant Skalsky filed a cross-complaint against the defendant Stelmachuk for the damages to his taxi.

The case was tried to a jury, which returned a verdict against all three of the defendants for a total of $21,997.57. This verdict included general damages in the sum of $15,675; special damages for hospital and medical care in the sum of $5,101.76; and damages for travel and other miscellaneous expenses incurred because of such injuries in the sum of $1,220.81.

After entry of judgment on the verdict, each of the defendants made a separate motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Such motions were based on claimed failure of proof of the respective defendants' negligence; on insufficiency of the evidence to support the jury's verdict as to damages; and on alleged errors at law occurring during the trial. The court made its order denying the motions for judgment notwithstanding the verdict, but granting a new trial on the issue of damages only unless the plaintiff, within thirty days, should agree to a reduction of the verdict in the sum of $4,000. The court's order further provided that if the plaintiff did agree to such reduction, the motions for new trial were denied.

The plaintiff filed written consent to such reduction of the verdict, and each of the defendants thereupon appealed to this court from the judgment and from the order denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

■ On appeal from a judgment, the appellate court must view the evidence in the light most favorable to the respondent. In this case, each of the defendants contends that the evidence is insufficient to sustain a verdict against him. Each seems to concede that the plaintiff should recover from someone, but the defendant Stelmachuk contends that such recovery should be from the defendants Skalsky and Perzinski, while the latter assert that the plaintiff's recovery should be from the defendant Stelmachuk alone. Therefore, we will first consider the question of sufficiency of the evidence to sustain a verdict against the various defendants.

The record discloses that the two vehicles involved in this collision were the only vehicles in the vicinity at the time of the accident. The record fails to show that there were any other distracting circumstances which might excusably have diverted the attention of the drivers. Each of the drivers claims to have had the green light in his favor.

■ Where evidence as to who was negligent is in conflict, as it is here, or where reasonable minds might come to different conclusions therefrom, the question of negligence should be submitted to the jury. There was no claim by anyone that the plaintiff was in any way guilty of contributory negligence. It is conceded, we believe, that at least one of the defendant drivers must have been driving without due care or the collision would not have occurred, because two cars, each being driven with due care, do not, under ordinary conditions, col-

lide. The very fact that they did collide strongly indicates negligence. And where the evidence as to which of the drivers was negligent is conflicting, the question was properly submitted to the jury.

■ Whether a driver's conduct, on reaching an intersection protected by electric signals, measures up to the standard of care required under the circumstances must be determined by the facts of the case which exist at the time of such conduct. While the presence of traffic signals at the intersection lessens the danger and thus lessens the degree of care required of a motorist who proceeds on a proper light, the existence of such lights does not do away with the necessity of some care and caution on the part of such motorist. He still must use care commensurate with the danger that continues to exist. He cannot place blind reliance upon the light, or upon conditions which he observes prior to entering the intersection. Smith v. United News Co., 413 Pa. 243, 196 A.2d 302.

■ The evidence submitted to the jury in this case shows that the vehicles approached the intersection at right angles. It further shows that this was an open intersection and that each driver could see traffic coming from the direction in which the other vehicle approached the intersection, for a distance of 150 feet. Thus, if the drivers had been keeping a proper lookout, each could have seen the other approach the intersection for at least 150 feet. The very fact that neither driver saw the other until the vehicles were within twenty feet of each other speaks eloquently of negligence on the part of both. Each contends that he had the green light. Even though one of them may have had the green light in his favor, a driver who has the right of way at an intersection, either by reason of priority of approach or because of some traffic regulation, over another driver approaching the same intersection from another direction, the right which he thus enjoys is not an absolute right but is at all times subject to the proposition that he must exercise that right in such a way as to avoid injury to himself and others. While, ordinarily, where an intersection is controlled by electric traffic signals, the question of whether one driver or the other is responsible for a collision would depend primarily on which one was operating in conformity with such signals, both drivers must be on the lookout and have their vehicles under such control as to enable them to obey promptly any change in signals. Just because a driver, on approaching an intersection, finds that he has the right of way, such fact does not give him the right to proceed without due care by failing to keep a proper lookout for others who may operate their vehicles on the highway in a negligent manner. While it is true that he has a right to assume that others will honor his right of way, he cannot, because of that fact, drive without due care. Here, each driver admits that he did not see the other car until it was within twenty feet of his own vehicle, although, had he been keeping a proper lookout, he could have seen such other car when it was 150 feet from the intersection. Thus, in the exercise of due care, he could have avoided the collision even though the other driver was negligently failing to honor his right of way. The determination of the jury that, under these circumstances, both drivers were guilty of negligence resulting in injury to the plaintiff is, we believe, sustained by the evidence. Where there were no other cars in the vicinity, and where there were no other circumstances distracting in their nature which might excusably have diverted their attention, we believe both drivers were negligent and that the finding of the jury of negligence on the part of both was proper. Anderson v. Schreiner (N.D.), 94 N.W.2d 294.

Having determined that the evidence is sufficient to sustain a verdict against the defendants, and each of them, we now will consider the other numerous specifications of error served by the various defendants in support of their individual appeals, including claims of insufficiency of the evi-

dence to support the verdict as to damages and alleged errors of law occurring during the trial of the action.

The defendant Stelmachuk has specified a number of errors of law which he complains of and which, he contends, entitle him to a reversal of the judgment or to a new trial. He contends that the court committed the following errors:

1. In instructing the jury on the effect of the failure of a party to call a witness, or to produce evidence available to him which evidence was not available to the other party;

2. That the court erred in denying the defendant's motion to reopen the case during the argument to the jury, for the purpose of permitting the additional testimony of the defendant's wife;

3. That the court erred in its instruction to the jury on the measure of damages to be awarded to the plaintiff; and

4. That the evidence introduced at the trial shows that recovery allowed the plaintiff for hospital and nursing services, for medical and surgical services, and for other expenses was excessive in that the evidence showed that the plaintiff was suffering from pre-existing ailments, including hypertrophic osteoarthritis, varicose veins, diabetes mellitus, calcification of the aorta, and hypertension.

We now will discuss these specifications of error in the order set forth above, but will consider 1 and 2 together.

The court gave the following instruction to the jury which now is claimed to be erroneous by the defendant Stelmachuk:

"Members of the jury, I charge you if you find that a party to this action had a material witness or evidence available to him which he would naturally be expected to produce in court and which was not available to the adverse party, then you may infer if you think it reasonable and fair for you to do so,

that such evidence if produced would have been unfavorable to the party failing to produce it."

The defendant Stelmachuk contends that this instruction is erroneous and prejudicial because it was not applicable to the evidence in the case, and therefore it could have been misleading to the jury. We have examined the record, and it discloses that the defendant Stelmachuk's wife was in the front seat of the car with him at the time of the accident; that both the plaintiff and the defendant Perzinski testified that, immediately after the accident, the defendant Perzinski went to the defendant Stelmachuk and asked him why he had gone through the red light; that the defendant Stelmachuk denied hearing such question, but that he failed to call his wife as a witness although she allegedly was sitting beside him when the question was asked. The defendants Perzinski and Skalsky contend that these circumstances justified the giving of the above instruction which the defendant Stelmachuk contends was error, and they further contend that the failure of the defendant Stelmachuk to call his wife should permit an inference by the jury that her testimony, had she been called as a witness, would have been unfavorable.

Counsel for the defendant Stelmachuk contends further that his motion to reopen the case for the purpose of calling Stelmachuk's wife should have been granted and that the denial of his motion was error.

█ The record discloses that the defendant Stelmachuk deliberately failed to call his wife as part of his trial strategy. The record further shows that this matter was fully discussed by the parties and the court in chambers after all of the parties had rested and before the arguments to the jury were commenced. If the defendant Shelmachuk had desired to do so, at that time and after he had been advised that the plaintiff and the other defendants would argue that the failure to call the wife could give rise to an inference by the jury that

her testimony would be unfavorable, if it felt such inference reasonable, he could have made a motion to reopen the case. But he deliberately, and again as part of his trial strategy, did not do so. He chose to rely on his contention that the wife's testimony was only cumulative and not material and that, in any event, she was as available as a witness to the other defendants as she was to the defendant Stelmachuk. He cites Barringer v. Arnold, 358 Mich. 594, 101 N.W.2d 365, in which case the court lays down the rule that, where a witness is equally available to both parties, no inference against either can arise by failure to call such witness.

That this is the general rule will be conceded. See 31A C.J.S. Evidence § 156(3), p. 403; 20 Am.Jur., "Evidence," Sec. 189, p. 193. But, in the case before us, the witness was not equally available to all parties. She was the wife of the defendant. As such wife, she presumably was disposed to be favorable to his side of the case, and the unexplained failure to produce her as a witness, we believe, permits an inference that her evidence, if produced, would have been unfavorable. See 31A C.J.S., § 156(3), Note 9 (1), page 410, where we read:

"The failure of a party to call as a witness a person related to him who has knowledge of the facts warrants an inference or presumption that such person's testimony would be unfavorable."

We cannot come to any other conclusion than that the failure to call the defendant's wife was a deliberate part of the defendant's trial strategy. He knew that an instruction was going to be given and that arguments would be made touching on her failure to testify. Yet he deliberately failed to move for permission to reopen the case and to permit the wife to be called as a witness until the plaintiff had completed opening arguments to the jury and the defendant was in the process of presenting his argument. Then, in the course of such argument, he suddenly referred to the court's proposed instruction on his failure to produce the wife as a witness and stated, "We now offer, gentlemen, to reopen this case to bring in Mrs. Stelmachuk and put her on the stand." The court denied his motion.

The United States Supreme Court has held, in a criminal prosecution, that if counsel of an accused deliberately chooses, as part of the trial strategy, not to object to illegally obtained evidence, in the hope of discrediting a witness or in the hope of inviting error, his conduct amounts to a waiver binding on the accused. Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408.

Surely, if that is the rule in a criminal prosecution, there is far greater reason for holding in a civil proceeding that the deliberate failure of the defendant to call his wife during the trial, or to move to reopen the case after the parties had rested, when he knew the court would instruct on his failure to produce the wife as a witness, was deliberate trial strategy and that such conduct was a waiver of his right, after arguments had been partially completed, to thereafter make such motion. When his strategy appeared to fail, he could not thereafter predicate error upon a denial of his motion to reopen his case for further testimony.

The granting or denial of a motion to reopen the case for the introduction of further evidence, after all parties have rested, is within the sound discretion of the trial court, and the court's decision will not be reversed on appeal unless the appellate court is satisfied that such discretion was abused. Calkins v. Seabury-Calkins Consol. Min. Co., 5 S.D. 299, 58 N.W. 797, 53 Am. Jur., "Trial," Sec. 123, p. 109.

The defendant Stelmachuk also contends that the court erred in giving the following instruction:

"Our law provides that the measure of damages for an injury sustained

through negligence of the defendants, where their negligence is a proximate cause of such injuries and consequent damages, is such amount which will compensate plaintiff for all detriment proximately caused by the negligence of the defendants, or either of them, whether such damages could have been anticipated or not."

The defendant contends that this instruction was erroneous in that the true rule is that only such damages are recoverable as are reasonably foreseeable, whether anticipated or not, and that the giving of the above instruction was erroneous and amounted to a misdirection.

There is no merit to this contention. Section 32–03–20, North Dakota Century Code, provides for the measure of damages in tort actions. It reads:

"For the breach of an obligation not arising from contract, the measure of damages, except when otherwise expressly provided by law, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

██ Thus the instruction which the court gave and which the defendant complains of was almost a verbatim quotation of the law on the question of damages. No error was committed by the giving of this instruction. .

Finally, the defendant Stelmachuk contends that the undisputed evidence shows that a portion of the expenses incurred for plaintiff's hospital and nursing care was for physical conditions present in the plaintiff prior to the accident, and that no evidence was introduced showing, with reasonable certainty, that these were incurred as a result of the accident.

██ Where the evidence shows that the plaintiff suffered from a condition unrelated to the collision, if the negligence of the defendants was the proximate cause of ag-

gravating such previously existing condition, that effect could, and should, be considered in assessing damages to the plaintiff, where the decision of the jury on the question of negligence requires that it fix damages in favor of the plaintiff. In this case, the trial court carefully instructed on the matter of aggravation of a pre-existing condition. It advised the jury:

"With reference to the allowance of damages, I charge you, however, that if you find from a fair preponderance of the evidence that the plaintiff had certain physical ailments, disabilities, which existed prior to the time the collision occurred, such as diabetes, varicose veins, osteo-arthritis or other conditions, that the plaintiff cannot recover any damages for any physical ailment or other disability which existed prior to the time the collision involved in this accident occurred, save and except that you may allow her such amount which will compensate plaintiff for all detriment proximately caused by the negligence of the defendants or either of them for the following purposes, namely:

"(1) For physical injury, if any, she may have sustained in said automobile collision;

"(2) For the aggravation of any pre-existing physical ailment or disability;

"(3) For physical and mental pain and suffering which she may have endured; and

"(4) For past and future expenses for medical care and treatment."

The court then continued its instruction as follows:

" * * * That with respect to the aggravation of any pre-existing physical ailment or disability, I charge you that if you find from a fair preponderance of the evidence that one or more of the defendants were negligent and that their negligence was either a

proximate, concurring or the sole cause of the injuries, if any, the plaintiff sustained, that then you can allow plaintiff such sum as will compensate her for the aggravation of any pre-existing physical ailment or disability. It is the aggravation, which makes the pre-existing disability worse, more serious or acute, that is compensible, to the extent that such pre-existing condition was made worse by the negligence of the defendants or either of them. In other words it hurt or made the pre-existing condition more grave than it would have been but for the negligence of the defendants."

█ Thus the jury was properly instructed on the question of the damages to be assessed where the collision causes an aggravation of a pre-existing condition. The court, in view of the fact that there was an aggravation of a pre-existing condition, and in view of the fact that some of the specials were for treatment of conditions which existed prior to the accident, reduced the judgment by $4,000. Viewing all of the evidence in the case on the injuries which the plaintiff proved, the amount of the verdict returned by the jury, as reduced by the court, was justified.

█ The determination of damages in a personal-injury case, which includes the damages for pain and suffering, never is susceptible of arithmetical calculation. Its ascertainment must, to a large degree, depend upon the common knowledge, good sense, and practical judgment of the jury. Lake v. Neubauer (N.D.), 87 N.W.2d 888. There is no certain or definite rule by which the amount of damages can be measured, and each case must be determined on its own merits. This determination is in the province of the jury. Before this court will interfere with the verdict on appeal, it must be so excessive or so inadequate as to be without support in the evidence.

The evidence discloses that the plaintiff suffered from a number of pre-existing ail-

ments, including hypertrophic osteoarthritis, varicose veins, diabetes mellitus, calcification of the aorta, and hypertension. It further discloses that, as a result of the accident, these ailments were greatly aggravated and that, in addition, the plaintiff suffered a fractured right knee, injury to the ligaments of her right leg, severe injuries to her chest, and severe contusions and abrasions over her body; that it was necessary for her to have her leg in a cast over one and one-half months, and she was hospitalized for more than two months.

The trial court having carefully instructed on the matter of aggravation of an existing condition, and the amount of the verdict not being so excessive as to be without support in the evidence, and the court having reduced the amount of the verdict by $4,000, the amount of the judgment entered was justified. A verdict will not be set aside on the ground that it is excessive, unless the amount of it is so outrageously excessive as to suggest or demonstrate that the jury was influenced by passion or prejudice. Anderson v. Schreiner (N.D.), 94 N.W.2d 294.

█ The defendants Skalsky and Perzinski have served numerous specifications of error in support of their appeals. Many of these alleged errors are in the giving of or in the refusing to give certain instructions to the jury. All of the instructions must be considered together, and as a whole, so that they may be properly understood. Sather v. Bigger (N.D.), 107 N.W.2d 38. If, as a whole, the instructions given fairly state the law applicable to the evidence when so considered, error cannot be predicated on the giving thereof. We will now consider those specifications of error as served by these defendants which we feel may have some merit.

█ The defendants contend that the court erred in instructing the jury on the degree of care required of the defendants as operators of a taxi service for hire.

In this connection the court instructed the jury:

" * * * That a common carrier of persons for hire must exercise the utmost care and diligence for the safe carriage of their passengers."

The court then went on to say:

"The court charges you that a common carrier is not an insurer of the safety of its passengers but such carrier its agents and employees must exercise a high degree of care and skill to secure the safe transportation of its passengers to avoid their exposure to any danger which reasonable care and prudence can reasonably anticipate or prevent.

"Members of the jury, I used the words 'utmost care,' in these instructions with respect to the duty of a common carrier in the transportation of passengers for hire. The words, 'utmost care,' means the highest degree of care or all the care and diligence possible in the nature of the case. A carrier is bound to use the utmost care as so defined to provide for the safety of its passengers."

The defendants contend that this instruction placed upon them a higher degree of care than the law imposes, and that the words "all the care and diligence possible in the nature of the case" is an improper definition of the words "utmost care."

Our statute fixes special liability on a carrier such as a cab company. Section 8–02–02, North Dakota Century Code, provides:

"A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

The defendants contend that the instruction given requires of them all care possible, whereas the law only requires of them such care as is reasonable.

As we have pointed out, all of the instructions given to the jury must be considered together. The court in this case went on to instruct the jury on care required as we have heretofore pointed out. The instructions, considered together, were proper. The jury was specifically told that the common carrier must exercise such care as to avoid the exposure of passengers to danger "which reasonable care and prudence can reasonably anticipate or prevent."

This court has held that a common carrier of passengers must exercise the highest degree of care reasonably to be expected from human diligence and foresight for the passengers' safety. Finlayson v. Yellow Cab Co., 56 N.D. 407, 217 N.W. 662. The liability of a common carrier to its passengers is not to be determined solely by the principles which control liability to third persons, but a common carrier owes its passengers an additional duty. Haser v. Pape, 77 N.D. 36, 39 N.W.2d 578.

The statute uses the term "utmost care." Webster defines "utmost" as being "the highest, greatest, or best." The court, by defining "utmost care" as the "highest degree of care possible in the nature of the case," and following that statement by a further statement that the carrier is not an insurer but that it must "exercise a high degree of care and skill to secure the safe transportation of its passengers," gave, we believe, a proper instruction. The terms "ordinary care," "utmost care," and "highest degree of care" are relative and applicable to the particular circumstances to which they are applied. "Utmost care" required of a carrier of passengers means no more than "every care which is practicable by carriers engaged in the business of transporting passengers. The words "utmost care" are synonymous with "highest degree of care." The term

"utmost care and diligence" has been defined as meaning "every care which is practicable" by common carriers engaged in the business of transporting passengers. Shamblee v. Virginia Transit Co., 204 Va. 591, 132 S.E.2d 712. We do not believe that the instruction that "utmost care," meaning "the highest degree of care and diligence possible in the nature of the case" places any greater responsibility upon the carrier than the requirement that a common carrier must exercise "the highest degree of care reasonably to be expected from human diligence and foresight for the passenger's safety." Finlayson v. Yellow Cab Co., 56 N.D. 407, 217 N.W. 662.

The defendants Skalsky and Perzinski also contend that the court erred in denying their motion to be permitted to show that they were not covered by liability insurance. When the court denied this motion, the defendants made an offer of proof out of the hearing of the jury, offering to prove by the defendant Skalsky that, prior to the date of the accident, he had applied for and had obtained an automobile liability policy in a casualty company doing business in the State of North Dakota and that such policy was in full force and effect on the date of the accident; that obtaining such insurance coverage was a prerequisite to the continuance of the taxi business in the city of Dickinson; that the defendant further offered to prove that, subsequent to the date of the accident and before the date of trial, the insurance company issuing such policy became insolvent and went into the hands of receivers and had neither the ability nor the intention of paying any judgment which might be recovered against the defendants.

The defendants contend that, although it is generally true that evidence of insurance or lack thereof will be excluded from the evidence in a trial of an action [Appleman, Insurance Law and Practice (1962), Vol. 21, Chap. 443, Secs. 12831 and following], in this case we have a different situation.

The defendants point to the fact that the jury which tried the case had the right to assume that the law had been obeyed [Sec. 31–11–03(32), N.D.C.C.]; that our law gives to the governing body of a municipal corporation the power to license, tax, and regulate the operation of taxicabs [Sec. 40–05–01(27), N.D.C.C.]; that under the power so given to municipalities, the City of Dickinson had enacted an ordinance requiring the owners of taxicabs to furnish insurance policies indemnifying persons using taxis and the public in general against loss of personal property; that the jury in this case had the right to assume that this had been done by the defendant Skalsky since it was required by the law; and that in truth and in fact the defendant Skalsky had applied for and had received a policy of liability insurance covering the operation of his taxis but that the said insurance company which had issued such policy, after the date of the accident and before the date of trial, had become insolvent. Defendants further contend that, since the law permits the plaintiff to show that the defendant operator of such taxi carried liability insurance by joining the insurance company as a defendant [James v. Young, 77 N.D. 451, 43 N.W.2d 692, 20 A. L.R.2d 1086], the defendants should be permitted to show the nonexistence of such liability protection where, through no fault of theirs, such insurance protection does not exist.

The trial court denied such offer of proof, and the ruling of the trial court is sustained on appeal. The question of insurance has no place in the trial of issues of fact under the pleadings in this case. All that this court held in James v. Young, 77 N.D. 451, 43 N.W.2d 692, 20 A. L.R.2d 1086, was that, where a policy of insurance to protect a public carrier indemnifies persons using a cab and the public in general and is not a protection to the owner of the cab, such insurance company may be joined as a defendant in the action.

Certain other assignments of error are specified, predicated upon rulings in the admission of evidence and upon the court's instructions to the jury. It is unnecessary to review these at length. Most of them have been disposed of, or rendered immaterial, by what we have said in this opinion. All of the specifications have been carefully considered. No prejudice to any of the defendants could have resulted from any of the matters complained of. They have been found to be without merit.

It follows that the order and judgment of the district court must be affirmed. They are so affirmed.

BURKE, C. J., and ERICKSTAD, KNUDSON, and TEIGEN, JJ., concur.